UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL RUBIN, | : | **08 Civ. 02233 (VM)** |
| Plaintiff, | : | |
| v. | : | **ELECTRONICALLY FILED** |
| MF GLOBAL, LTD., ET AL., | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
THE MF GLOBAL INSTITUTIONAL INVESTOR GROUP AND IN
OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL
PURSUANT TO SECTION 27(a)(3)(B) OF THE SECURITIES ACT OF 1933**

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.      INTRODUCTION ..................................................................................................................... 1

II.     ARGUMENT ............................................................................................................................. 2

       A.     The MF Global Institutional Investor Group Is the Most
            Adequate Plaintiff and Should Be Appointed Lead Plaintiff
            of the Consolidated Action ................................................................................................ 2

       B.     The South Shore Group Suffers from Additional Infirmities,
            Further Demonstrating That It Is Not The Most Adequate
            Plaintiff To Represent The Proposed Class ..................................................................... 7

            1.     The South Shore Group Cannot Demonstrate Loss Causation ..................... 7

            2.     To The Extent Any Member Of The South Shore Group Is
                  An Investment Manager Or Investment Advisor, The Group May
                  Not Qualify As The Most Adequate Plaintiff .................................................. 9

            3.     The South Shore Group's Certifications Are Facially Inadequate ............ 10

III.    CONCLUSION ....................................................................................................................... 11

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(S)**

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002) ...........................................................................................3

*In re Comverse Tech., Inc. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) .....................................................8

*In re eSpeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ..............................................................................3, 9, 10

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ....................................................................................5

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp.2d 286 (E.D.N.Y. 1998) .................................................................................5

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................................3, 6

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542 (N.D. Tex. 1997) ................................................................................6

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) ...................................................................................6

*Kops v. NVE Corp.*,
    Civil No. 06-574, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) .......................8

*Levine v. AtriCure, Inc.*,
    508 F. Supp. 2d 268 (S.D.N.Y. 2007)..............................................................................7

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ....................................................................................9

*Weisz v. Calpine Corp., No. C 02-1200 SBA*,
    2002 U.S. Dist. LEXIS 27831 (N.D. Cal. Aug. 19, 2002)..........................................9, 10

**STATUTES**

15 U.S.C. §77k(e) ...............................................................................................................4, 5, 7

15 U.S.C. § 77z-1(a)(3)(B)(i) ...................................................................................................2, 3

15 U.S.C. § 78u-4(e)..................................................................................................................4

The MF Global Institutional Investor Group, consisting of the Iowa Public Employees' Retirement System ("IPERS"), the Policemen's Annuity & Benefit Fund of Chicago ("PABF"), the Central States, Southeast and Southwest Areas Pension Fund ("Central States") and the State-Boston Retirement System ("State-Boston"), respectfully submits this memorandum in further support of its motion for appointment as proposed lead plaintiff and for approval of its selection of lead counsel and in opposition to the competing motions filed with this Court.

## I.   INTRODUCTION

MF Global Institutional Investor Group and seven other movants[1] originally filed motions with this Court on May 9, 2008 seeking appointment as lead plaintiff under the Private Securities Litigation Reform Act of 1995 (the "PSLRA") in the actions currently pending against MF Global, Ltd. ("MF Global" or the "Company") and certain of its officers and directors (the "Action").  Two groups of movants have now withdrawn their applications.[2]  The MF Global Institutional Investor Group clearly has the largest financial interest out of all the remaining movants still seeking appointment because it sustained a loss of **$5,089,629** on its investment in MF Global securities — the determinative factor for appointment of a lead plaintiff in a securities class action.  As set forth more fully below at 4-6, the MF Global Institutional Investor Group's loss is nearly ***$3 million larger*** than the loss of every other remaining lead plaintiff

---

[1]  The seven other movants (hereafter the "Competing Movants") are: (1) the Detroit General Retirement System ("Detroit General"); (2) the South Shore Group, consisting of the South Shore Investment Group ("South Shore"), CRL Management, LLC ("CRL Management"), Kal Koplin ("Koplin") and Michael Rubin ("Rubin"); (3) the Massachusetts Laborers' Pension Fund ("Massachusetts"); (4) the Sheet Metal Workers Pension Plan of Northern California ("Sheet Metal Workers"); (5) the Building Trades United Pension Trust Fund ("Building Trades Fund"); (6) a group consisting of individuals Ira Zeidman and Roslyn Fabian ("Zeidman and Fabian"); and (7) Jose Betancourt ("Betancourt").

[2]  Zeidman and Fabian withdrew their lead plaintiff motion on May 14, 2008.  Similarly, in light of the much greater losses experienced by each member of the MF Global Institutional Investor Group, the Sheet Metal Workers withdrew its lead plaintiff motion on May 21, 2008.

1

movant ***combined***, and is more than fives times greater than the loss figure advanced by the next closest movant.

Further, the MF Global Institutional Investor Group is amply qualified to serve as Lead Plaintiff and has selected capable counsel with a proven track record to prosecute this action on behalf of the proposed class. Accordingly, pursuant to the mandate of the PSLRA, this Court should: (1) appoint the MF Global Institutional Investor Group as lead plaintiff in the consolidated Action, (2) approve the MF Global Institutional Investor Group's selection of lead counsel, and (3) deny the remaining motions from the Competing Movants for appointment of lead plaintiff and approval of their proposed counsel.

## II.  ARGUMENT

### A.  The MF Global Institutional Investor Group Is the Most Adequate Plaintiff and Should Be Appointed Lead Plaintiff of the Consolidated Action

Section 27 of the PSLRA provides that in a securities class action, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). In determining who is the "most adequate" plaintiff, the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff … is the person or group of persons that—
>
> * * *
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005). The procedure to be applied in selecting the lead plaintiff was summarized by the Ninth Circuit in *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002), as follows:

> [T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy … satisfies these requirements, he becomes the presumptively most adequate plaintiff.

In its motion papers, each member of the MF Global Institutional Investor Group sets forth all of its transactions in MF Global stock during the Class Period, together with each member's calculation of losses. *See* Declaration of Mark R. Rosen filed with the MF Global Institutional Investor Group's Lead Plaintiff Motion ("Rosen Decl."), Exhibits B-E. These submissions demonstrate that the MF Global Institutional Investor Group sustained a loss of ***$5,089,629*** in connection with its purchases of MF Global stock. The MF Global Institutional Investor Group's loss is nearly $3 million larger than the loss of every other remaining lead plaintiff movant ***combined***, and is nearly fives times greater than the loss figure advanced by the next closest movant. In fact, IPERS, PABF and Central States each individually lost more than any of the other remaining Competing Movants on their investments in MF Global securities, as evidenced in the following table:

## LOSSES OF COMPETING MOVANTS

| MOVANT | | LOSS |
|---|---|---|
| **MF GLOBAL INSTITUTIONAL INVESTOR GROUP** | | **$5,089,629** |
| | IPERS | $1,630,918 |
| | PABF | $1,287,447 |
| | Central States | $1,276,576 |
| | State-Boston | $894,668 |
| | | |
| **SOUTH SHORE GROUP** | | **$924,016[3]** |
| | CRL Management | $457,020 |
| | South Shore | $343,561 |
| | Koplin | $100,365 |
| | Rubin | $23,070 |
| | | |
| **DETROIT GENERAL** | | **$728,024[4]** |
| | | |
| **MASSACHUSETTS** | | **$319,743[5]** |
| | | |
| **BUILDING TRADES FUND** | | **$269,191[6]** |
| | | |
| **BETANCOURT** | | **$4,607[7]** |

---

[3, 4, 7] The numbers indicated here represent the true losses of the South Shore Group, Detroit General and Betancourt, as calculated in accordance with the damages provisions of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §77k(e). It appears that, in calculating their loss figures, these three movants erroneously employed the methodology under the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(e), which limits damages to an amount "not exceed[ing] the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." In this case, rather than using the $18.39 share price on the date the first action was filed, March 6, 2008, for retained shares, as mandated by Securities Act, the South Shore Group, Detroit Generaland Betancourt incorrectly used average share prices of $13.0945, $13.0865 and $13.0945, respectively, thereby artificially inflating their claimed losses. The true loss figures for these movants have been corrected using the proper methodology and appear in the chart above. In addition, the loss figure for Michael Rubin, one of the South Shore Group's members, has also been corrected. Any remaining discrepancies in the movants' figures are due to rounding differences, which do not merit further comment.

[5] The number indicated here represents Massachusetts' true loss in accordance with the damages provisions of the Securities Act, 15 U.S.C. §77k(e). While Massachusetts calculated its purported $324,161 loss using the closing price of MF Global stock on the date the first action was filed, as required by the Securities Act damages provision, 15 U.S.C. §77k(e), Massachusetts appears to have failed to cap its purchase price at $30 for the last three purchases it made on October 5, 2007, December 28, 2007, and December 31, 2007. Under the Securities Act, in calculating damages, the price paid for the security may not exceed "the price the security was offered to the public," 15 U.S.C. §77k(e), which in this case was $30.

[6] This number indicates an estimate of the true loss of movant Building Trades Fund as calculated in accordance with the damages provision of the Securities Act. As mandated by the Securities Act, damages for shares sold before the date of the lawsuit are actual damages, the price paid less the price received. 15 U.S.C. § 77k(e). The Building Trades Fund used the sale price $17.75, the price of MF stock on the "date of notice," March 10, 2008. Because the Building Trades Fund did not provide the actual sales price for some of the shares it sold before the action was filed, we have used $17.55 the closing price on February 29, 2008, the date of sale.

4

Further, the financial interest of the MF Global Institutional Investor Group is equally strong under the four-factor test from *In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 295 (E.D.N.Y. 1998), which considers: (1) the total shares purchased during the class period; (2) the net shares purchased (after deducting sales) during the class period; (3) the total net funds expended; and (4) the movant's loss.  As the Honorable Richard J. Sullivan of this District noted earlier this year, this test is commonly employed in this District in selecting a lead plaintiff under the PSLRA, with the most emphasis being placed upon the last factor, namely, the approximate loss suffered by each movant.  *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436-37 (S.D.N.Y. 2008).  The application of the four factors test to each of the movants is set forth in the following chart:

**FOUR FACTORS ANALYSIS**

| MOVANT | Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|---|
| MF Global Institutional Investor Group | 599,380 | 499,080 | $14,107,507 | $5,089,629 |
| South Shore Group | 292,450 | 2,000 | $960,795 | $924,016 |
| Detroit General | 83,000 | 70,200 | $2,019,002 | $728,024 |
| Massachusetts | 32,100 | 32,100 | $910,062 | $319,743 |
| Building Trades Fund | 93,300 | 18,106 | $588,155 | $269,191 |
| Betancourt | 600 | 500 | $13,802 | $4,607 |

This chart demonstrates that the MF Global Institutional Investor Group leads each of the competing movants under each of these four factors, including the approximate loss.

The conclusion that the MF Global Institutional Investor Group is the most adequate plaintiff to prosecute this action is reinforced by a number of other considerations.  In addition to

5

having the largest claimed loss, as more fully set forth above, the MF Global Institutional Investor Group is comprised of institutional investors with broad geographic coverage and representation, and institutional investors are precisely the types of parties that Congress, in enacting the PSLRA, sought to encourage to serve as lead plaintiffs.  *See* MF Global Institutional Investor Group Lead Plaintiff Memorandum of Law, filed May 9, 2008 (the "Prior Memorandum"), at 3-4 (citing *Glauser*, 236 F.R.D. at 188; *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997)).  The remaining competing movants cannot seriously dispute that the MF Global Institutional Investor Group possesses adequate resources necessary to prosecute this action on behalf of MF Global shareholders, given that the members of the MF Global Institutional Investor Group collectively represent over 610,000 active and retired employees and maintain combined assets of more than $56 billion.  *See* Prior Memorandum at 2-3.

The competing movants also cannot dispute that the MF Global Institutional Investor Group satisfies the requirements of Rule 23 and has chosen counsel with a stellar record of success in securing record recoveries for injured investors.  S*ee* Prior Memorandum at 10-14; Rosen Decl., Exhibits F-G.

Therefore, in accordance with the standards of the PSLRA, the MF Global Institutional Investor Group has established that it is the presumptive lead plaintiff and the submissions of the Competing Movants have only served to strengthen that presumption.  Accordingly, the Court should appoint the MF Global Institutional Investor Group as the lead plaintiff for this litigation, and approve its selection of co-lead counsel for the proposed class.

### B. The South Shore Group Suffers from Additional Infirmities, Further Demonstrating That It Is Not The Most Adequate Plaintiff To Represent The Proposed Class

In addition to the fact that its losses pale in comparison to those of the MF Global Institutional Investor Group — which is the determinative factor in the appointment of a lead plaintiff — the South Shore Group's motion papers also suffer from three other defects that reinforce the conclusion that this group is not the most adequate plaintiff to represent the proposed class here.

#### 1. The South Shore Group Cannot Demonstrate Loss Causation

First of all, the South Shore Group's inability to demonstrate loss causation exposes it to an affirmative defense under Section 11 of the Securities Act – a defense which is unique, and which alone renders it inadequate to serve as lead plaintiff.

Section 11 of the Securities Act excuses a defendant from liability where the defendant is able to prove that a plaintiff's damages "represent[] other than the depreciation in value of [the] security resulting from such part of the registration statement, with respect to which his liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(e). Thus, where a plaintiff is unable to demonstrate loss causation, a defendant is relieved of liability. *See Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007).

The requirements for demonstrating loss causation are well-settled. To establish loss causation, plaintiffs must prove that the defendant's misrepresentation … *proximately caused* the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (emphasis added). Notably, "[i]f … the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* at 342.

7

Here, three of the four members of the South Shore Group – namely, CRL Management, South Shore, and Koplin – sold <u>all 290,150</u> of their shares of MF Global stock *before* the alleged fraud was disclosed on February 28, 2008, the last day of the Class Period. *See* Weiss Decl. at Ex. B. Additionally, the fourth member of the South Shore Group, Rubin, sold 300 of his 2,300 shares prior to the end of the Class Period. *Id.* Under *Dura*, losses incurred from sales of shares before MF Global's misconduct was disclosed to the public "are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation." *In re Comverse Tech., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *13 (E.D.N.Y. Mar. 2, 2007). Thus, the South Shore Group is unable to prove loss causation as to all but 2,000 of its MF Global shares.

In *Comverse*, the Eastern District of New York explained what weight to give a movant's inability to demonstrate loss causation when selecting a lead plaintiff. The court held that in-and-out losses should be excluded from a prospective lead plaintiff's loss calculation for purposes of determining which lead plaintiff movant possesses the largest loss under the PSLRA. *Comverse*, 2007 U.S. Dist. LEXIS 14878, at *22-23; *see also Kops v. NVE Corp.*, Civil No. 06-574, 2006 U.S. Dist. LEXIS 49713, at *14-15 (D. Minn. July 17, 2006) (discounting in-and-out losses from the lead plaintiff loss calculation). Accordingly, the court held that a lead plaintiff movant could not recover losses on 362,315 of its 534,471 shares, all of which were sold prior to any corrective disclosure of alleged fraud. *Comverse*, 2007 U.S. Dist. LEXIS 14878, at *23. The movant could only recover losses on the 172,156 shares which it held through the end of the Class Period. *Id.*

Here, as noted above, excluding the South Shore Group's in-and-out transactions in MF Global stock leaves the entire group with only 2,000 shares of stock on which it may claim losses. In his certification, Rubin states that he still retains these shares, for which he paid

8

$60,000. *See* Weiss Decl., Exhibit B. Assigning a value of $18.39 (the closing price on March 6, 2008, the date the first complaint in this litigation was filed) to these retained shares yields cumulative losses of approximately $23,220[8] – losses which pale in comparison to the MF Global Institutional Investors Group's claimed losses of $5,089,629.

The South Shore Group's inability to demonstrate loss causation as to all but 2,000 of its shares gives rise to a unique defense which severely undermines its adequacy as a lead plaintiff. *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (disqualifying a proposed lead plaintiff who sold all of its stock prior to any corrective disclosure and was thus "subject to a unique defense"). For this additional reason, the South Shore Group's motion for appointment as lead plaintiff should be denied.

### 2. To The Extent Any Member Of The South Shore Group Is An Investment Manager Or Investment Advisor, The Group May Not Qualify As The Most Adequate Plaintiff

Second, it is well-settled that, to the extent any lead plaintiff movant under the PSLRA is an investment advisor or investment manager, that movant may not serve as a lead plaintiff unless that advisor or manager makes a *prima facie* showing that it qualifies as a single person under the PSLRA. *See In re eSpeed*, 232 F.R.D. at 98 ("In order for an investment advisor to attain standing on behalf of investors the transactions in question must have been executed as if by a single person"); *Weisz v. Calpine Corp.*, No. C 02-1200 SBA, 2002 U.S. Dist. LEXIS 27831, *19 (N.D. Cal. Aug. 19, 2002). Further, "the advisor must be the attorney in fact for his clients, and he must be granted both unrestricted decision-making authority and the specific right to recover on behalf of his clients." *In re eSpeed*, 232 F.R.D. at 98; *see also Weisz*, 2002 U.S. Dist. LEXIS 27831 at *22-*24.

---

[8] The South Shore Group's revised losses of $23,220 are the same whether calculated according to a last-in, first-out ("LIFO") methodology or a first-in, first out ("FIFO") methodology.

9

Given the absence of any meaningful description concerning either the South Shore Investment Group or CRL Management, it is impossible to determine even the nature of the business of these entities. However, neither has submitted anything to indicate that (1) each entity acted as a single investor and (2) each entity has the authority to act as an attorney in fact for their clients. As such, to the extent that either entity is an investment advisor or manager, the South Shore Group cannot constitute the most adequate plaintiff in this litigation.

### 3. The South Shore Group's Certifications Are Facially Inadequate

Finally, the motion and accompanying certifications submitted by at least two members of the South Shore Group are facially inadequate because they fail to provide even minimal information concerning two members of their group, the South Shore Investment Group and CRL Management. In fact, it is impossible to even determine the identity of the signatories of their certifications because their names and signatures are completely illegible.[9] *See* Declaration of Joseph H. Weiss in Support of South Shore Group Motion, filed May 9, 2008 ("Weiss Decl."), Exhibit B. Because these movants have failed to provide any basic information about either of these movants, including the identity of their signatories, it is impossible for this Court, members of the proposed class, and other movants to properly evaluate the merits of their application here.

---

[9] In fact, the certifications submitted on behalf of these entities appear to be "form" certifications that have a blank where the name of the movant is filled in by hand. *See* Weiss Decl., Exhibit B. The certifications consistently refer to the signatory as the person who is willing to serve as a representative party and as the person who is attesting to the signatory's purchases, rather than the entity's purchases of MF Global securities and to the signatory's, rather than the entity's, service in other class actions under the federal securities laws. *Id*.

Moreover, in view of the fact that these certifications were prepared and signed on April 28, 2008, nearly two weeks before the motions were filed, there is no reason why South Shore's motion or certifications do not, at a minimum, provide some information concerning each entity seeking to be appointed and clearly state the name of the signatories of each of the certifications evidencing their authority to authorize suit on behalf of each entity. In addition to the fact that their losses are miniscule compared to those of the MF Global Institutional Investor Group,[10] the South Shore Group's failure to provide even this cursory information weighs against their claim to be the most adequate plaintiff to represent the proposed class in this case.

### III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in its opening submission, the MF Global Institutional Investor Group respectfully requests that its motion for appointment as lead plaintiff, and approval of its selection of co-lead counsel for the class, be granted.

DATED:  May 27, 2008                                     Respectfully submitted,

By: _____/s/ William J. Ban_____
A. Arnold Gershon (AG-3809)
William J. Ban (WB-0382)
Regina M. Calcaterra (RC-3858)
**BARRACK, RODOS & BACINE**
1350 Broadway
Suite 1001
New York, NY  10018
Phone: (212) 688-0782
Fax: (212) 688-0783

---

[10] As set forth above at 5, the losses are the South Shore Group were also overstated due to its failure to calculate them in accordance with the provisions of the Securities Act. Further, the loss figure for one member of the South Shore Group, Michael Rubin, is claimed to be $33,661 in the chart attached to the Weiss Declaration, but is stated to be $33,862 in the South Shore Group's memorandum. *Compare* Weiss Decl., Exhibit B; South Shore Group Memorandum of Law, filed May 9, 2008, at 10. No explanation is given for the discrepancy.

11

        **BARRACK, RODOS & BACINE**
Leonard Barrack
Daniel E. Bacine
Mark R. Rosen
Chad A. Carder
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103
Phone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for the Iowa Public Employees' Retirement System, the Policemen's Annuity & Benefit Fund of Chicago, and [Proposed] Co-Lead Counsel for Plaintiffs and the Class*

Lynda J. Grant (LG-4784)
**COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.**
150 East 52nd Street, 30th Floor
New York, NY 10022
Phone: (212) 838-7797
Fax: (212) 838-7745

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
**COHEN, MILSTEIN, HAUSFELD
    & TOLL, P.L.L.C.**
1100 New York Avenue, N.W.
Suite 500 West Tower
Washington, DC 20005-3964
Phone: (202) 408-4600
Fax: (202) 408-4699

> Carol V. Gilden
> **COHEN, MILSTEIN, HAUSFELD
>     & TOLL, P.L.L.C.**
> 190 S. LaSalle Street, Suite 1705
> Chicago, IL 60603
> Phone: (312) 357-0370
> Fax: (312) 357-0369
>
> *Attorneys for the State-Boston Retirement System and Central States, Southeast and Southwest Areas Pension Fund and [Proposed] Co-Lead Counsel for Plaintiffs and the Class*
>
> Christopher J. Keller (CK-2347)
> Andrei V. Rado (AR-3724)
> **LABATON SUCHAROW LLP**
> 140 Broadway
> New York, NY 10005
> Phone: (212) 907-0700
> Fax: (212) 818-0477
>
> *Additional Attorneys for the State-Boston Retirement System*