UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL RUBIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> MF GLOBAL, LTD., MAN GROUP PLC, KEVIN R. DAVIS, AMY S. BUTTE, ALISON J. CARNWATH, CHRISTOPHER J. SMITH, CHRISTOPHER BATES, HENRI J. STEENKAMP and EDWARD L. GOLDBERG, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )     **08-CV-2233 (VM)** |

**REPLY MEMORANDUM OF LAW OF THE
SOUTH SHORE INVESTMENT GROUP FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

This Reply Memorandum of Law is respectfully submitted by the South Shore Investment Group in further support of its motion for appointment as lead plaintiff and approval of its selection of lead counsel and in opposition to the competing motions.

## PRELIMINARY STATEMENT

With the withdrawal of the lead plaintiff motions of the Detroit General Retirement System and Jose Betancourt, and the failure of other movants to submit opposition briefs, we are down to two sets of movants actively vying to be appointed lead plaintiff and have their attorneys appointed lead counsel. The two movants are South Shore and the Investor Group, each of which has losses larger than any of the other movants.

On June 4, 2008, following up on prior telephone conversations, counsel for the South Shore Investment Group wrote to counsel for the Investor Group, proposing once again, in accordance with the Court's suggestion and precedents in this and other courts, that for the benefit of the Class, as well as preservation of judicial resources, they join forces and have each set of movants select one institution or individual to serve as co-lead plaintiff. A copy of the letter is attached hereto. On June 6, 2008, the Investor Group rejected the proposal. A copy of the rejection letter is also attached hereto.

As more fully set forth in South Shore's May 27, 2008 Opposition Memorandum, and as further shown herein, although the lawyer-assembled and lawyer-driven Investor Group has larger losses than South Shore, any presumption afforded the largest movant is rebutted because they have not and will not oversee this litigation, they have acted against the interests of the Class

and have sought to mislead this Court,[1] they suffer from disabling infirmities, they are subject to unique defenses, and they otherwise cannot fairly and adequately protect the interests of the Class, as demonstrated by their:

(a) retention of at least *fifteen* lawyers in *three* law firms, operating out of *six* locations and willingness to permit lawyers to use their names in filing 30 or more applications for lead plaintiff status in the past three years;

(b) indifference to how and with whom the lawyers proceed, including institutions with whom they have had an adversarial, antagonistic relationship;

(c) inclusion in the group of an institution with a "checkered past" and in "critical" condition that is subject to a court appointed monitor's oversight, that the court system refuses to permit to act as a fiduciary and to independently manage the assets and pension funds of its own beneficiaries, and that has been rejected by other courts as a lead plaintiff;

(d) inclusion in the group of an institution which has sought to serve as lead plaintiff or class representative in at least *eleven* cases in the past three years and which may be subject to pay-to-play issues which will be a distraction in the litigation and endanger the interest of the Class; and

(e) inclusion in the group of institutions with severe conflicts of interests.

---

[1] In an attempt to minimize the financial interests of the South Shore movants in the outcome of this litigation, the Investor Group's opposition Memorandum contends that almost all of South Shore's losses should be disregarded because they were incurred in connection with MF shares purchased in the IPO but sold prior to disclosure of the misrepresentations or omissions giving rise to the litigation. Accordingly, they contend that the South Shore movants -- and all other similarly situated class members -- will not be able to establish loss causation and will be precluded from recovery. However, as discussed below, they have mischaracterized the case law, which holds that loss causation is not an element of a Section 11 claim. Moreover, they have failed to disclose to the Court that they have measured their own losses by including in their Certifications and damage calculations losses incurred in connection with shares purchased in the IPO but sold prior to the disclosure of the misrepresentations or omissions.

In the face of these infirmities and unique defenses, none of which the Investor Group disclosed to the Court, and which taint and disqualify the entire Investor Group, it argues that South Shore will not be able to establish causation with respect to most of its losses, relieving defendants of liability and that the Certifications submitted by the institutional members of the South Shore group should have contained greater detail or specificity regarding their structure or authority. Neither of these arguments has merit.

## ARGUMENT

### POINT I

### SOUTH SHORE IS NOT REQUIRED TO DEMONSTRATE LOSS CAUSATION UNDER SECTION 11

All but one of the cases cited by the Investor Group in support of its specious contention that South Shore will not be able to establish causation with respect to most of its losses were cases brought pursuant to Section 10(b) of the Securities Act of 1934. These cases, including *Dura Pharmaceuticals*, discussed loss causation in the 10(b) context; they did not deal with Section 11. The attempt by the Investor Group to mischaracterize these cases and inappropriately expand the loss causation requirements under *Dura* to Section 11 cases demonstrates that it is an unworthy fiduciary prepared to prejudice the Class by limiting their recovery in order to seize control of this litigation, notwithstanding the fact that the Investor Group Certifications themselves (as well as their counsel's June 6, 2008 letter, which is attached hereto) included $1,435,877 in losses incurred for MF shares sold prior to the disclosure of the misrepresentations and omissions.[2]

---

[2] The Certification on behalf of The Iowa Public Employees' Retirement System includes a Loss Chart which claims a $172,189 loss with respect to 55,400 shares of MF purchased on the IPO and sold on August 31, 2007, prior to any disclosure. The Certification on

3

Indeed, the only Section 11 case cited by the Investor Group, *Levine v. AtriCure, Inc.*, cited at page 7 of its opposition Memorandum, <u>rejected</u> the arguments made by the Investor Group here. In *AtriCure* the Court held:

> Loss causation (i.e. a causal connection between the material misrepresentation or omission and plaintiff's loss) is not an element of a § 11 claim under the Securities Act. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 382 (S.D.N.Y. 2006) ("A plaintiff need only plead a material misstatement or omission in the registration statement to establish a prima facie fraud claim under § 11 of the Securities Act; a plaintiff is not required to plead loss causation." (citation omitted)); *Adair v. Kay Kotts Assocs.*, No. 97 Civ. 3375 (SS), 1998 U.S. Dist. LEXIS 3900, at *24 (S.D.N.Y. Mar. 27, 1998) ("Loss causation is not an element of a Section 11 claim.")

508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007).

Noting that the strict liability provisions of Section 11 were "designed not so much to compensate the defrauded purchaser as to promote enforcement of the Act and to deter negligence by providing a penalty for those who fail in their duties," Judge Holwell stated that Section 11 creates a factual presumption that "any decline in value is . . . caused by the misrepresentation in the registration statement." *Citing McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1044, 1048 (2d Cir. 1995) (*citing Greenapple v. Detroit Edison Co.*, 618 F.2d 198, 203 n.9 (2d Cir. 1980) ("plaintiff need show no causal connection between the decline in the price of the security and the materially false misstatement or omission")). *AtriCure*, 508 F. Supp. 2d at 272.

---

behalf of the Central States, Southeast and Southwest Areas Pension Fund includes a Loss Chart which claims a $718,435.98 loss with respect to 24,714 shares of MF and an additional $440,435.77 loss with respect to 15,086 shares of MF, and an additional $104,816.93 loss with respect to 3,700 shares of MF sold prior to any disclosure of any misrepresentations or omissions. If these losses, which total $1,263,688.88, are not counted because of the position taken by the Investor Group with respect to loss causation, Central States' real loss for purposes of this litigation is only $12,887.33. (This is derived by subtracting the $1,263,688.68 in pre-disclosure losses from the $1,276,576.01 in total losses.)

4

Here, similarly, where all of the complaints allege only Section 11 and Section 12 claims, there is a presumption in favor of the Class, notwithstanding the Investor Group's unfortunate statements to the contrary, that any decline in the value of MF shares was caused by the misrepresentations or omissions in MF's registration statement, irrespective of when class members sold their shares. It is worth noting that MF's IPO never could have taken place if the registration statement had disclosed that the Company's internal controls were shut down. When submitting its Certifications to the Court, the Investor Group apparently agreed. Its contentions should be judged by what it did, not by what it now self-servingly argues.

Judge Holwell also cited Judge Keenan's decision in *In re WRT Energy Sec. Litig.*, No. 96 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 18701 (S.D.N.Y. Aug. 30, 2005), vacating his earlier decision on a Rule 12(b)(6) motion and allowing plaintiffs to assert a Section 11 claim for damages for declines in share value *prior* to the first alleged disclosure. Accordingly, the Court agreed with the plaintiff's position in support of his lead plaintiff motion [and the South Shore position in support its lead plaintiff motion] that it is sufficient for him to state that he "sold at a loss due to a price decline between the IPO and the date of the sale"; that he "has no duty to plead or prove loss causation"; and that the defendants bear "the burden of proving that the price decline prior to plaintiff's sale was not caused by the dissemination of nondisclosed, material information into the marketplace." *AtriCure*, 508 F. Supp. 2d at 277

Hence, the Investor Group's position is not only wrong, and not only contrary to its own position when it moved to be appointed lead plaintiff and when it responded to South Shore's proposal, but demonstrates that it is willing to sacrifice the interests and potential recovery of many members of the Class and the pension funds themselves in order to be appointed lead plaintiff and lead counsel. It is absolutely clear that the members of the Investor Group are not

faithful fiduciaries, they will not represent and protect the interests of the Class, and they are not adequate plaintiffs. Any presumption that they are the most adequate plaintiffs has been rebutted.

## POINT II

### SOUTH SHORE'S CERTIFICATIONS FULLY COMPLY WITH THE REQUIREMENTS OF THE PSLRA

The PSLRA in Section 27 of the Securities Act of 1933 expressly provides what the Certification is required to contain. It provides that a movant is required to (i) state that the plaintiff has reviewed the complaint and authorized its filing; (ii) state that the plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the Act; (iii) state that the plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary; (iv) set forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint; (v) identify any other action under the Act, filed during the 3-year period preceding the date on which the certification is signed by the plaintiff, in which the plaintiff has sought to serve or served, as a representative party on behalf of the class; and (vi) state that the plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court. *See* 15 U.S.C. 77z-1(a)(2)(A)(i)-(vi). Each of the members of the South Shore group has executed the precise certification mandated by the PSLRA. Nothing more is required of them. *See Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("[a] wide ranging

analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification").

## CONCLUSION

For the foregoing reasons, the presumption that the Investor Group is the most adequate plaintiff has been rebutted and the South Shore Investment Group, the movant with the next largest financial interest in the outcome of this litigation, should be appointed as lead plaintiff, its selection of Weiss & Lurie as lead counsel should be approved, and all other motions should be denied. Alternatively, in order to insure adequate representation of the Class, the Court should appoint one member of the South Shore Investment Group and one member of the Investor Group as co-lead plaintiffs and one law firm from each group as co-lead counsel.

Dated: June 6, 2008

                                        Respectfully submitted,

                                        **WEISS & LURIE**

                                        By: /s/ Joseph H. Weiss
                                        Joseph H. Weiss  (JW-4534)
                                        James E. Tullman  (JT-9597)
                                        Mark D. Smilow (MS-2809)
                                        551 Fifth Avenue
                                        New York, New York 10176
                                        (212) 682-3025
                                        (212) 682-3010 (Fax)

                                        Attorneys for Movants
                                        South Shore Investment Group, CRL
                                        Management, LLC, Kal Koplin and
                                        Michael Rubin

# WEISS & LURIE

The Fred French Building
551 Fifth Avenue
New York, New York 10176
TEL (212) 682-3025
FAX (212) 682-3010

June 4, 2008

New York . Los Angeles

**VIA TELECOPY**

A. Arnold Gershon, Esq.
Barrack Rodos & Bacine
1350 Broadway, Suite 1001
New York, NY 10018

Steven J. Toll, Esq.
Cohen, Milstein, Hausfeld & Toll, P.L.L.C.
1100 New York Avenue, N.W.
Suite 500 West Tower
Washington, DC 20005-3964

Re: Rubin v. MF Global, Ltd.
Case No. 08-cv-02233 (VM)

Dear Counsel:

I write to again propose that, in accordance with Judge Marrero's suggestion, and in the interests of the Class and to preserve the Court's resources, we attempt to resolve the lead plaintiff and lead counsel issues amongst ourselves, subject to approval by the Court. Inasmuch as we apparently represent the only remaining movants and inasmuch as we are each now aware of the arguments that will be made to the Court, it seems sensible and in the interest of the Class that we revisit this issue now.

Rather than continuing to compete for the lead plaintiff and lead counsel positions and thereby provide further fodder to the defendants and possibly prejudice the Class, it seems to me that we ought to join forces and have each of our group of movants select a single investor to represent the group and the Class as co-lead plaintiffs. As you are well aware, this proposition has been adopted in numerous cases since Judge Brieant's decision in Oxford Health, in which he noted as follows:

> The rebuttable presumption created by the PSLRA which favors the plaintiff with the largest financial interest was not intended to obviate the principle of providing the class with the most adequate representation and in general the Act must be viewed against established principles regarding Rule 23 class actions. Allowing for diverse representation, including in this case a state pension fund, significant individual investors and a large institutional investor, insures that the interests of all class members will be adequately represented. . . .

WEISS & LURIE

A. Arnold Gershon, Esq.
Steven J. Toll, Esq.
June 4, 2008
Page 2

      This reasoning has been adopted in many other cases, including Calpine ("the court finds that appointing both an institutional and an individual investor to serve as co-lead plaintiffs will insure that [the interests of] all class members will adequately be represented in the prosecution of this action"); Lockheed Martin ("the court also finds that with the appointment of one lead plaintiff who is an individual private investor and one lead plaintiff that is an institutional investor, the lead plaintiffs will represent a broader range of shareholder interests than if the Court appointed an individual or an institutional investor alone"); Cable & Wireless (the appointment of an individual investor and an institutional investor is more "ideal" than appointing just one or the other); Ascendent Solutions (a structure including two individual investors and an institutional investor "improves diversity of experience" for the class); and Versata ("The group possesses both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action."). I will be pleased to provide you with citations to these cases at your request.

      Accordingly, I would appreciate your consideration of this proposal and contacting me by Friday if you wish to discuss it.

                                   Very truly yours,

                                   Joseph H. Weiss

JHW/man

cc:   (Via Telecopy)
      Daniel S. Sommers, Esq.
      Lynda J. Grant, Esq.
      S. Douglas Bunch, Esq.
      Carol V. Gilden, Esq.
      Leonard Barrack, Esq.
      Daniel E. Bacine, Esq.
      William J. Ban, Esq.
      Regina M. Calcaterra, Esq.
      Christopher J. Keller, Esq.
      Andrei V. Rado, Esq.

Leonard Barrack
Gerald J. Rodos
Daniel E. Bacine
William J. Ban'
Jeffrey A. Barrack
Stephen R. Basser*
Regina M Calcaterra'
Chad A. Carder⁻ʺ
A. Arnold Gershonᵐ
Jeffrey B. Gittleman⁻⁻
Jeffrey W Golan
John L. Haeussler*
Robert A. Hoffman**
M. Richard Komins
Gloria Kuiᵐ
Lisa M. Lamb
Leslie Bornstein Molder
Mark R. Rosen***
Beth R. Targanᵀᵀ
Samuel M. Ward*

Of Counsel
Frances Vilella-Vélezᵐ

Admitted in PA, except:
*   Admitted in CA
**  Also admitted in NJ
*** Also admitted in CA & NJ
†   Also admitted in NY
π   Admitted in NY
ππ  Admitted in NY & NJ
ᵐ   Also admitted in Puerto Rico


Main Office
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
215.963.0600
215.963.0838 Fax


California Office
402 West Broadway
Suite 850
San Diego, CA 92101
619.230.0800
619.230.1874 Fax


New Jersey Office
49 Bridge Street
Lambertville, NJ 08530
609.773.0104
609.773.0219 Fax


New York Office
1350 Broadway
Suite 1001
New York, NY 10018
212.688.0782
212.688.0783 Fax

**Barrack, Rodos & Bacine**
A Professional Corporation
Attorneys At Law
www.barrack.com

mrosen@barrack.com

June 6, 2008

## VIA FACIMILE

Joseph H. Weiss, Esquire
Weiss & Lurie
The Fred French Building
551 Fifth Avenue
New York, NY 10176

Re:   **Rubin v. MF Global, Ltd.**

Dear Mr. Weiss:

This is in response to your letter of June 4, 2008 proposing a negotiated deal for the selection of lead plaintiffs and their appointment of lead counsel in the MF Global securities litigation. We believe that your proposal is contrary to the language and purpose of the PSLRA and the overwhelming majority of decisions considering such proposals.

The legal principles governing the selection of the lead plaintiff under the PSLRA are clear. As one Court of Appeals explained in *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002):

> ... the Reform Act provides in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy. Once it determines which plaintiff has the biggest stake, the court must appoint that plaintiff as lead, unless it finds that he does not satisfy the typicality or adequacy requirements.

\* \* \*

> ... a straightforward application of the statutory scheme ... provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made and the court identifies the plaintiff with the largest stake in the litigation, further inquiry must focus on that plaintiff alone and be limited to determining whether he satisfies the other statutory requirements. That the district court believes

Barrack, Rodos & Bacine

Joseph H. Weiss, Esquire
June 6, 2008
Page 2

> another plaintiff may be "more typical" or "more adequate" is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.

*See also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002) (once presumption is triggered, question is not whether competing movant might do a better job of representing class). *Cavanaugh*'s understanding of the mandate of the PSLRA has been repeatedly cited and applied within the Southern District of New York. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 98-99 (S.D.N.Y. 2005) (Scheindlin, J.) (citing *Cavanaugh* and holding that "[t]he lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfills the requirements of the Act."); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (Sweet, J.) (quoting and following *Cavanaugh*); *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.). In short, the thrust of the PSLRA is clear: the statute **mandates** that the court select as lead plaintiff the movant that has experienced the greatest loss, unless a competing movant is able to rebut the presumption that the movant with the greatest loss is the most adequate representative of the proposed class.

The application of these principles mandates the rejection of your claim that the MF Global Institutional Investor Group is not entitled to serve as lead plaintiff in this action. The MF Global Institutional Investor Group consists of four institutions with losses of **$5,089,629**, while your own group of four competing investors reported losses totaling **$924,016**. Moreover, a review of the individual investors making up the two competing groups demonstrates that three of the four members of the MF Global Institutional Investor Group *separately* experienced losses greater than the **combined** losses of the members of your group, and that **no individual member of your group had larger losses than any individual member of the MF Global Institutional Investor Group**. Moreover, the members of your group with the largest claimed losses also face a *Dura* issue that is likely to create serious typicality problems in establishing class certification and prosecuting this matter to judgment.

We understand that at the initial conference held before the lead plaintiff motions were filed Judge Marrero encouraged plaintiffs to join together to create a lead plaintiff group. However, the simple fact of the matter is that the members of the MF Global Institutional Investor Group did precisely that when four institutional investors came together and agreed upon the joint prosecution of this litigation. Moreover, we find it more than a bit ironic that your briefs have consistently attacked our clients for their willingness to include certain members in the MF Global Institutional Investor Group, yet you have repeated sought to join that group.

*Barrack, Rodos & Bacine*

Joseph H. Weiss, Esquire
June 6, 2008
Page 3

   Under these circumstances, we believe that the MF Global Institutional Investor Group is clearly entitled to appointment as lead plaintiff, and we do not believe that adding one or more members of your group – whose losses are so much smaller than those of every member of the MF Global Institutional Investor Group – is either necessary or appropriate. Accordingly, we decline your invitation to agree to any negotiated arrangement in derogation of these principles.

                Sincerely,

                Mark R. Rosen

MRR/sdd
cc: Carol Gilden, Esquire

## CERTIFICATE OF SERVICE

  I hereby declare that a copy of the foregoing was mailed, postage prepaid, on the 6th day of June, 2008 to the following:

Steven J. Toll
S. Douglas Bunch
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
(202) 408-4600
(202) 408-4699 (Fax)

Lewis Kahn
650 Poydras Street, Suite 2150
New Orleans, LA 70130
(504) 455-1400
(504) 455-1498 (Fax)

                **WEISS & LURIE**

                By: /s/ Joseph H. Weiss
                Joseph H. Weiss (JW-4534)
                James E. Tullman (JT-9597)
                Mark D. Smilow (MS-2809)
                551 Fifth Avenue
                New York, New York 10176
                (212) 682-3025
                (212) 682-3010 (Fax)