UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MICHAEL RUBIN, | 08 Civ. 02233 (VM) |
| Plaintiff, | **MEMORANDUM OF LAW** |
| v. | |
| MF GLOBAL, LTD., ET AL., | <u>**ELECTRONICALLY FILED**</u> |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION OF THE MF GLOBAL INSTITUTIONAL INVESTOR GROUP
AND IN OPPOSITION TO COMPETING MOTIONS FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
<u>PURSUANT TO SECTION 27(a)(3)(B) OF THE SECURITIES ACT OF 1933</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. The MF Global Institutional Investor Group Is The Most Adequate Plaintiff ............................................................................................................... 2

    B. The MF Global Institutional Investor Group Is A Cohesive Group Dedicated To Maximizing The Recovery Of The Proposed Class ........................ 2

    C. All Members Of The MF Global Institutional Investor Group Are Adequate ........................................................................................................... 4

        1. Central States Is Adequate To Serve As Lead Plaintiff ............................ 4

        2. State-Boston Is Adequate to Serve as Lead Plaintiff ................................ 7

        3. PABF Is Adequate To Serve As Lead Plaintiff ........................................ 9

        4. IPERS Is Adequate To Serve As Lead Plaintiff ....................................... 9

III. CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Baker v. Arnold*,
  No. C 03-05642 JF, slip op. (N.D. Cal. May 17, 2004)..............................................................6

*Ferrari v. Impath, Inc.*,
  No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 20, 2004) ................8

*Glauser v. EVCI Career Colleges Holding Corp.*,
  236 F.R.D. 184 (S.D.N.Y. 2006) ..............................................................................................1

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ..................................................................................................10

*In re Cendant Corp. Litigation*,
  264 F.3d 201 (3d Cir. 2001)................................................................................................8, 10

*In re Cisco Sys., Inc. Sec. Litig.*,
  No. C-01-20418-JW (PVT),
  2004 U.S. Dist. LEXIS 27008 (N.D. Cal. May 27, 2004) .....................................................5, 6

*In re eSpeed, Inc. Sec. Litig.*,
  232 F.R.D. 95 (S.D.N.Y. 2005) ................................................................................................1

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2005) .........................................................................................9

*In re HealthSouth Corp. Sec. Litig.*,
  No. CV-03-BE-1500-S, slip op. (N.D. Ala. July 8, 2005) .......................................................5

*In re Veeco Instruments, Inc.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) ..............................................................................................7

*Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
  No. 06 Civ. 5797, slip op. (S.D.N.Y. Feb. 21, 2007)................................................................5

*Reimer v Ambac Fin. Group, Inc.*,
  No. 08 Civ. 411 (NRB),
  2008 U.S. Dist. LEXIS 38729 (S.D.N.Y. May 9, 2008).......................................................3, 9

*Selbst v. McDonald's Corp.*,
  No. 04 C 2422, slip op. (N.D. Ill. July 21, 2004).....................................................................5

*Sofran v. LaBranche & Co., Inc.*,
  220 F.R.D. 398 (S.D.N.Y. 2004) ............................................................................................10

Case 1:08-cv-02233-VM    Document 69    Filed 06/06/2008    Page 4 of 16

*Vladimir v. Bioenvision, Inc.*,
   No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) ........................10

**STATUTES**

15 U.S.C. § 77z-1(a)(3)(B) ....................................................................................................1, 2

I.  **<u>INTRODUCTION</u>**

There can be no credible dispute that the MF Global Institutional Investor Group is the most adequate plaintiff to prosecute this litigation, as it has the largest financial interest in the relief sought and otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 97-98 (S.D.N.Y. 2005); *see also* MF Global Institutional Investor Group Memorandum of Law In Support of Motion ("Initial Memorandum"), filed May 9, 2008, at 7-14; MF Global Institutional Investor Group Memorandum of Law In Further Support of Motion ("Response Memorandum"), filed May 27, 2008, at 1-7.  The presumption in favor of appointment of the MF Global Institutional Investor Group here may only be rebutted with ***proof*** that it "will not fairly and adequately protect the interests of the class; or…is subject to unique defenses that render [it] incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

All the other movants, except for the South Shore Group, have recognized the appropriateness of the MF Global Institutional Investor Group serving as lead plaintiff, as evidenced by the withdrawals, or abandonment, of their initial lead plaintiff motions.  However, the South Shore Group, whose losses are dwarfed by those of the MF Global Institutional Investor Group, instead mounts a meritless attack on the MF Global Institutional Investor Group -- an attack which consists of baseless innuendo and rhetoric.  This falls far short of the evidence and ***proof*** required by the PSLRA.  Moreover, the MF Global Institutional Investor Group was formed in keeping with the Court's early guidance and consists of four pension funds which came together and agreed upon the joint prosecution of this litigation.  These pension funds are sophisticated investors and collectively represent over 600,000 school teachers, police officers, and other public and private employees and their families.  Accordingly, this Court should reject

the South Shore Group's motion, and appoint the MF Global Institutional Investor Group as lead plaintiff.

## II. ARGUMENT

### A. The MF Global Institutional Investor Group Is The Most Adequate Plaintiff

The South Shore Group explicitly acknowledges that the MF Global Institutional Investor Group has the largest loss of any movant. As the chart below shows, three of the four members of the MF Global Institutional Investor Group have *each* individually sustained more losses than all four members of the South Shore Group *combined*:

**LOSSES OF COMPETING MOVANTS**

| MOVANT | | LOSS |
|---|---|---|
| **MF GLOBAL INSTITUTIONAL INVESTOR GROUP** | | **$5,089,629** |
| | IPERS | $1,630,918 |
| | PABF | $1,287,447 |
| | Central States | $1,276,576 |
| | State-Boston | $894,668 |
| | | |
| **SOUTH SHORE GROUP** | | **$924,016** |
| | CRL Management | $457,020 |
| | South Shore | $343,561 |
| | Koplin | $100,365 |
| | Rubin | $23,070 |

Thus, it is indisputable that the MF Global Institutional Investor Group "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Further, the MF Global Institutional Investor Group "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id*.; Initial Memorandum at 10-12; Response Memorandum at 6.

### B. The MF Global Institutional Investor Group Is A Cohesive Group Dedicated To Maximizing The Recovery Of The Proposed Class

The MF Global Institutional Investor Group is a cohesive group of four retirement systems with prior experience in class action litigation and serving as fiduciaries. Reply

2

Declaration of S. Douglas Bunch ("Bunch Reply Decl."), Exhibit A (Joint Declaration) at ¶ 6. Indeed, these institutions have prior relationships working together in associations committed to investor interests, such as the International Foundation of Employee Benefit Plans, the National Conference of Public Employee Retirement Systems, and the Government Finance Officers Association, among others. *Id*. at ¶ 8.

The members of the MF Global Institutional Investor Group came together to prosecute this litigation because they each have a large financial interest in the litigation and share the common goal of using their capability and experience to oversee this litigation to maximize the recovery for the proposed class. *Id*. at ¶¶ 6-7. The members of the MF Global Institutional Investor Group have pledged to remain informed at all times of the status and progress of this action, and are prepared to personally travel when their presence will be of benefit to the class. *Id*. at ¶ 9. Importantly, and contrary to the assertions of the South Shore Group, their explicit purpose in joining together was to ensure that competent, effective counsel of their choice were empowered to prosecute this action for the benefit of the class and that the members of the Group were able to monitor counsel's work and ensure that counsel litigated the action efficiently, cost-effectively, and without duplication of effort or expenses. *Id*. at ¶¶ 10-11.

There can be no question that the MF Global Institutional Investor Group is a cohesive group dedicated to maximizing the recovery of the proposed class and, consistent with its fiduciary duties, to monitoring counsel in its prosecution of the action. As such, the arguments of the South Shore Group should be rejected. *See Reimer v Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, at *8 (S.D.N.Y. May 9, 2008) (noting that requiring a pre-existing relationship among a group of investors is the "minority view" and rejecting a challenge to the appointment of a lead plaintiff group whose members had prior working

relationships, experience in prior class actions, and were dedicated to maximizing the recovery for the class).

### C.    All Members Of The MF Global Institutional Investor Group Are Adequate

#### 1.    Central States Is Adequate To Serve As Lead Plaintiff

The South Shore Group argues that Central States is not qualified to serve because it "lacks complete authority and autonomy over even itself." South Shore Group Memorandum in Further Support of Motion, filed May 27, 2008 ("South Shore Opposition"), at 7. In support of this conclusory assertion, the South Shore Group cites a **26 year-old** consent decree between Central States and the Department of Labor, stemming from allegations concerning Central States' activities in the 1960s or 1970s.[1] However, the consent decree does not relieve the trustees of Central States of their duties as fiduciaries. In fact, the consent decree expressly confirms and reinforces the trustees' fiduciary duties, which duties prompted Central States to seek appointment as lead plaintiff in this litigation. *See* Consent Decree, *Donovan v. Fitzsimmons*, No. 78 C 342 (N.D. Ill. Sept. 22, 1982), at 2-3 (attached as Ex. B to Bunch Reply Decl.). Notably, the consent decree does ***not*** affect the trustees' right or authority to pursue litigation regarding its assets, to seek lead plaintiff status to recover damages resulting from securities fraud, or to settle securities fraud litigation.

Thus, the notion that the consent decree has left Central States hamstrung and without the independence to make its own decisions is simply untrue. The trustees of Central States are even free to terminate the consent decree if and when they choose. Agreed Order Amending September 22, 1982 Consent Decree, *Whitfield v. Fitzsimmons*, No. 78 C 342 (N.D. Ill. Nov. 10, 1987), at 2 (providing that after September 22, 2007, Central States may even petition the Court

---

[1] Whatever its past, the Department of Labor now holds Central States in high regard, evidenced by the fact that Central States' Executive Director serves as a member of the Department's ERISA Advisory Board.

to dissolve the Consent Decree, which the Court shall grant absent a showing by the Secretary of Labor that it should remain in place) (attached as Ex. C to Bunch Reply Decl.).  Moreover, as a result of recent amendments to the Consent Decree, approximately 40% of Central States' total assets are presently under the trustees' control without the imposition of court-appointed "named fiduciaries," a point the South Shore Group conveniently ignores.  Declaration of James P. Condon ("Condon Decl.") at ¶ 7 (attached as Ex. D to Bunch Reply Decl.).

Multiple courts have rejected the arguments advanced by the South Shore Group, and have repeatedly recognized Central States' adequacy by appointing it as lead plaintiff, and later certifying Central States as a class representative under heightened Rule 23 scrutiny.  In *In re Cisco Sys., Inc. Sec. Litig.*, No. C-01-20418-JW (PVT), 2004 U.S. Dist. LEXIS 27008 (N.D. Cal. May 27, 2004), the court first found Central States adequate to serve as a lead plaintiff and, later, over defendants' identical challenge, certified Central States as a class representative.  In addition, after extensive briefing in the high-profile *HealthSouth* securities class action, Central States was appointed as lead plaintiff over exactly the same objections raised here concerning the consent decree.  *See In re HealthSouth Corp. Sec. Litig.*, No. CV-03-BE-1500-S, slip op. at 6 (N.D. Ala. July 8, 2005) (appointing Central States as lead plaintiff, finding that it met the "adequacy and typicality requirements of Rule 23") (attached as Ex. E to Bunch Reply Decl.); *see also Selbst v. McDonald's Corp.*, No. 04 C 2422, slip op. at 4 (N.D. Ill. July 21, 2004) (appointing Central States as lead plaintiff) (attached as Ex. F to Bunch Reply Decl.).

Ignoring these decisions, the South Shore Group instead relies on dicta in *Police and Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*, No. 06 Civ. 5797, slip op. at 6 (S.D.N.Y. Feb. 21, 2007), to argue that Central States is an inappropriate candidate for appointment as lead plaintiff.  Opp. Mem. at 6.  In *SafeNet*, however, the Court's inquiry was focused ***not*** on Central States'

5

adequacy, as Central States was not the presumptive lead plaintiff, but instead on the adequacy of another movant. *SafeNet*, slip op. at 5 (finding that another movant had the largest financial interest and was the presumptive lead plaintiff). Any discussion of Central States' adequacy accordingly was both dicta and tangential to this inquiry.[2] Similarly, although clearly marked "Not for Citation" and thereby of no precedential value, the South Shore Group relies on a ruling in *Baker v. Arnold*, No. C 03-05642 JF, slip op. at 6 (N.D. Cal. May 17, 2004), in challenging Central States' adequacy. Opp. Mem. at 8. *Baker* is distinguishable. There, the court found that, on the unique facts before it, the proposed *lead counsel* – not related to the proposed lead counsel here – suffered a conflict of interest that precluded Central States' appointment, and on that basis, as well its concern with the then-existing restrictions of the consent decree and funding deficiencies, appointed another movant. *Baker*, slip op. at 2.[3] Notably, the same court that issued *Baker* later certified Central States as a class representative just ten days later under the far more rigorous standards applied at the class certification stage in *In re Cisco Sys., Inc. Sec. Litig.*, *supra*.

Also unavailing is South Shore Group's assertion that Central States' adequacy is in question due to its "critical" funding status.[4] If underfunding undermined adequacy or otherwise

---

[2]  Further, at the time Judge Crotty issued his decision in *SafeNet*, Central States was not free to end the Consent Decree absent a showing of good cause. As the amendment to the Consent Decree cited above indicates, however, the Secretary of Labor now bears the burden of showing why the Consent Decree should continue. Nonetheless, of its own choosing, Central States has not petitioned the Court to end the Consent Decree, in part because it welcomes the exchange of information with the Department of Labor and the jurisdiction of the Court. *See* Condon Decl. at 5-6. Also subsequent to Judge Crotty's decision in *SafeNet*, the Consent Decree has been further amended to place a larger portion of the Fund's assets in accounts over which Central States' trustees have more authority. *Id.* at ¶ 7.

[3]  Whatever may have been the merit of the *Baker* court's concern about Central States incurring a funding deficiency when that court made its May 17, 2004 ruling, that issue is clearly not on the table now. On July 13, 2005, the IRS granted Central States an amortization extension that has effectively removed the funding deficiency threat. Condon Decl. at ¶ 10.

[4]  In determining Central States' "critical status," the fund's actuary disregarded the fact that, in July 2005, the IRS granted Central States' request for a ten-year extension for amortizing unfunded liabilities. Condon Decl. at

6

served as a roadblock to appointment, the vast majority of existing pension funds could not serve as lead plaintiff.  *See* National Association of State Retirement Administrators, "Public Fund Survey Summary of Findings for FY 2006" (October 2007) (attached as Ex. G to Bunch Reply Decl.).  Clearly this would be antithetical to the purposes of the PSLRA, which was passed in an effort to encourage the participation of institutional investors in these suits.  *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005).  Indeed, underfunded pension funds have successfully served as lead plaintiffs since passage of the PSLRA.  Not surprisingly, a pension fund that has been damaged by securities fraud plainly has more incentive – not less – to pursue claims against those who have caused its losses.  Central States seeks lead plaintiff appointment here and should be appointed precisely because Defendants' conduct negatively impacted its pension fund assets by $1,276,576 – ***more than any movant outside the MF Global Institutional Investor Group.***

### 2. State-Boston Is Adequate to Serve as Lead Plaintiff

The South Shore Group's vituperative attacks against State-Boston should also be rejected. That State-Boston (or any other member of the MF Global Institutional Investor Group) opposed the motion of Central States in another case is not a legally cognizable reason to reject their joint motion here. The issue before this Court is whether the MF Global Institutional Investor Group has met the statutory criteria for appointment as lead plaintiff. The record shows that it has.

The South Shore Group also argues that this is the eleventh time that Boston has sought appointment as lead plaintiff, insinuating that a jury will think Boston is blaming others

---

¶ 10.  This is a technical determination under the Pension Protection Act and is not indicative that Central States is insolvent, or on the verge of becoming so.  *Id.*  Indeed, Central States' funding is considerably better than the term "critical status" conveys, and, as Independent Counsel Frank J. Garr has noted, continues to improve.  Letter from Frank J. McGarr, Independent Special Counsel, to the Honorable James B. Moran, at 3 (May 1, 2008) (attached as Ex. H).

undeservedly for its investment losses. This attack is utterly lacking in merit. Boston is an institutional investor with $4 billion under management, is invested in thousands of companies, and is proud to assert its rights under the federal securities laws when it has suffered a sizable loss due to securities fraud, consistent with its fiduciary duties to its members and with the PSLRA's purpose of encouraging institutional investors to seek appointment as lead plaintiffs.

The South Shore Group also argues that Boston is subject to a unique defense because attorneys from Labaton Sucharow have made campaign contributions to public officials in Massachusetts. These incendiary "pay-to-play" allegations are wholly speculative and untrue. ***None of the public officials supported by the Labaton Sucharow firm had a say in Boston's decision to retain Labaton Sucharow***, a firm that has been successfully litigating securities class actions for over 40 years.[5]  Moreover, Labaton Sucharow is *not* seeking appointment as a lead counsel.

These types of speculative attacks were soundly rejected in *In re Cendant Corp. Litigation*, 264 F.3d 201, 269 (3d Cir. 2001), *cert. denied*, 535 U.S. 929 (2002), where, as here, competing movants failed to produce any evidence in support of their pay to play allegations. There, the Court ruled that there was no evidence that any lawful contributions had influenced the selection process, explaining that "[a]llegations of impropriety are not proof of wrongdoing. If they were, then any class member (or lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making unsupported allegations of impropriety." *See also, Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *21-23

---

[5] The Boston Retirement Board is comprised of Robert E. Tierney, Sally Glora, Lawrence Curran, Edward Welch, John J. Perkins and Mitchell Weiss, none of whom has received any contributions from Labaton Sucharow. Labaton Sucharow has also not made contributions to any persons (including the Boston City Auditor or the Mayor of Boston) that may have influence on these board members. The board consists of two members elected by active and retired members of the system; the city auditor (*ex officio*); one member appointed by the Mayor of Boston; and one member who is elected by the other four members of the board. *See* Ex. I to Bunch Reply Decl.

(S.D.N.Y. July 20, 2004) (rejecting as "red-herring" attempts by counsel to use "innuendo and inferences rather than established fact" to rebut a proposed lead plaintiff group's most adequate plaintiff presumption).

### 3.     PABF Is Adequate To Serve As Lead Plaintiff

The South Shore Group next contends that PABF faces unique defenses because of the ambiguous assertion that its investment managers, who also happen to be three of the largest investment banks in the world, are named as defendants in one of the actions pending before this Court.  South Shore Group Memorandum at 12.  The South Shore Group is wrong.

Courts in this District and around the country have rejected this kind of speculation as the basis for disqualification of a lead plaintiff applicant.  Specifically, in the opinion issued less than a month ago in *Reimer*, Judge Buchwald held that such speculative assertions regarding the financial interests of a lead plaintiff movant do not constitute the evidence or proof required by the PSLRA sufficient to rebut the presumption that the movant is the most adequate plaintiff.  *Reimer*, 2008 U.S. Dist. LEXIS 38729 at *13-14.  Judge Buchwald also cited the decision in *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261 (D.D.C. 2005), where the court rejected a similar "conflict of interest" challenge to a lead plaintiff movant who had purchased securities directly from the defendant.  *In re Fannie Mae*, 355 F. Supp. 2d at 263. [6]

### 4.     IPERS Is Adequate To Serve As Lead Plaintiff

Grasping at straws, and having failed to rebut the PSLRA's presumption in favor of the appointment of the MF Global Institutional Investor Group as lead plaintiff, the South Shore Group argues that IPERS is somehow unfit to represent the proposed class because it has joined with the other members of the MF Global Institutional Investor Group.  South Shore Opposition

---

[6]     Tellingly, the South Shore Group fails to cite any authority for its contention that PABF is subject to unique defenses.

9

at 12. The South Shore Group's argument against IPERS is baseless for the reasons discussed earlier, not to mention its counsel's repeated efforts to join the very group it now attacks.

The South Shore Group simply cannot contest the fact that IPERS has the largest loss of any investor in its class period purchases of MF Global securities, and ***IPERS' individual loss itself is nearly double that of the members of the South Shore Group collectively***. Further, despite an apparently exhaustive search, the South Shore Group has no mud to throw at IPERS. As such, even if this Court were to find that any of the individual members of the MF Global Institutional Investor Group were somehow inadequate to serve as lead plaintiff – which they are not – IPERS would still be entitled to appointment as lead plaintiff for the proposed class here.

### III.    CONCLUSION

The PSLRA mandates that the court appoint as lead plaintiff the movant that has the largest financial interest in the relief sought in the case, absent proof that it cannot satisfy the typicality or adequacy requirements, and the court may not substitute a different movant or combination of class members based upon the belief that they may be "more typical" or "more adequate." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002)[7]; *Cendant*, 264 F.3d at 268. It is undisputed that the MF Global Institutional Investor Group has experienced the largest loss, and nothing has rebutted the presumption that it is the most adequate plaintiff. Accordingly, the MF Global Institutional Investor Group respectfully requests that its motion for appointment as lead plaintiff, and approval of its selection of co-lead counsel for the class, be granted.

---

[7] *Cavanaugh* has been repeatedly cited and applied within the Southern District of New York. *See, e.g., eSpeed*, 232 F.R.D. at 98-99 (Scheindlin, J.) (citing *Cavanaugh* and holding that "[t]he lead plaintiff determination does not depend on the court's judgment of which party would be best lead plaintiff for the class, but rather which candidate fulfills the requirements of the Act."); *Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 402 (S.D.N.Y. 2004) (Sweet, J.) (quoting and following *Cavanaugh*); *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS)(AJP), 2007 WL 4526532 (S.D.N.Y. Dec. 21, 2007) (Peck, M.J.)

DATED:  June 6, 2008								Respectfully submitted,


										By: _____/s/ Lynda J. Grant_____
											Lynda J. Grant (LG-4784)
											**COHEN, MILSTEIN, HAUSFELD**
												**& TOLL, P.L.L.C.**
											150 East 52nd Street, 30th Floor
											New York, NY 10022
											Phone: (212) 838-7797
											Fax: (212) 838-7745

											Steven J. Toll
											Daniel S. Sommers
											S. Douglas Bunch
											**COHEN, MILSTEIN, HAUSFELD**
												**& TOLL, P.L.L.C.**
											1100 New York Avenue, N.W.
											Suite 500 West Tower
											Washington, DC 20005-3964
											Phone: (202) 408-4600
											Fax: (202) 408-4699

											Carol V. Gilden
											**COHEN, MILSTEIN, HAUSFELD**
												**& TOLL, P.L.L.C.**
											190 S. LaSalle Street, Suite 1705
											Chicago, IL 60603
											Phone: (312) 357-0370
											Fax: (312) 357-0369

											*Attorneys for the State-Boston
											Retirement System and Central States,
											Southeast and Southwest Areas Pension
											Fund and [Proposed] Co-Lead Counsel
											for Plaintiffs and the Class*

											A. Arnold Gershon (AG-3809)
											William J. Ban (WB-0382)
											Regina M. Calcaterra (RC-3858)
											**BARRACK, RODOS & BACINE**
											1350 Broadway
											Suite 1001
											New York, NY  10018
											Phone: (212) 688-0782
											Fax: (212) 688-0783

11

                        Leonard Barrack
                        Daniel E. Bacine
                        Mark R. Rosen
                        Chad A. Carder
                        **BARRACK, RODOS & BACINE**
                        3300 Two Commerce Square
                        2001 Market Street
                        Philadelphia, PA  19103
                        Phone: (215) 963-0600
                        Fax: (215) 963-0838

*Attorneys for the Iowa Public Employees' Retirement System, the Policemen's Annuity & Benefit Fund of Chicago, and [Proposed] Co-Lead Counsel for Plaintiffs and the Class*

Christopher J. Keller (CK-2347)
Andrei V. Rado (AR-3724)
**LABATON SUCHAROW LLP**
140 Broadway
New York, NY 10005
Phone: (212) 907-0700
Fax: (212) 818-0477

*Additional Attorneys for the State-Boston Retirement System*