UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
MICHAEL RUBIN,                    :
                                  :    08 Civ. 2233 (VM)
                 Plaintiff,       :
                                  :    **DECISION AND ORDER**
     - against -                  :
                                  :
MF GLOBAL, LTD. et al.,           :
                                  :
                 Defendants.      :
----------------------------------X

**VICTOR MARRERO, United States District Court.**

     This case is the lead case in an action regarding alleged violations of the federal securities laws in connection with the initial public offering ("IPO") of common stock of defendant MF Global, Ltd. ("MF Global"). Lead plaintiffs have alleged violations of the Securities Act of 1933 (the "Securities Act"), §§ 11, 12(a)(2), and 15. 15 U.S.C. §§ 77k, 77l(a)(2), and 77. The Corrected Consolidated Class Action Complaint, dated September 12, 2008 (the "CCAC"), names as defendants MF Global and Man Group, PLC (the "Man Group"). The CACC names as individual defendants Kevin R. Davis ("Davis"); Amy S. Butte ("Butte"); Alison J. Carnwath ("Carnwath"); Christopher J. Smith ("Smith"); Christopher Bates ("Bates"); Henri J. Steenkamp ("Steenkamp"); and Edward L. Goldberg ("Goldberg") (collectively, the "Individual Defendants"). The CACC also names numerous underwriter defendants that were allegedly involved in the MF Global IPO: Citigroup Global Markets, Inc.; J.P. Morgan Securities, Inc.; Lehman Brothers, Inc. ("Lehman Brothers"); Merrill Lynch,

Pierce, Fenner & Smith, Inc.; UBS Securities, LLC; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities, Inc.; Goldman, Sachs & Co.; Morgan Stanley & Co., Inc.; ABN AMRO Rothschild LLC; Banc of America Securities LLC; BMO Capital Markets Corp.; HSBC Securities (USA), Inc.; Keefe, Bruyette & Woods, Inc.; Sandler O'Neill & Partners, L.P.; Wachovia Capital Markets, LLC; Blaylock & Co., Inc.; Calyon Securities (USA), Inc.; Chatsworth Securities LLC; CL King & Associates, Inc.; Dowling & Partners Securities LLC; E*TRADE Securities LLC; Fortis Securities LLC; Guzman & Co.; ING Financial Markets LLC; Jefferies & Co., Inc.; Lazard Capital Markets LLC; M.R. Beal & Co.; Mizuho Securities USA, Inc.; Muriel Siebert & Co., Inc.; Oppenheimer & Co., Inc.; Piper Jaffray & Co.; Raymond James & Associates, Inc.; RBC Capital Markets Corp.; Robert W. Baird & Co., Inc.; Samuel A. Ramirez & Co., Inc.; SMH Capital Inc.; Stifel, Nicolaus & Co., Inc.; Sun Trust Capital Markets, Inc.; The Williams Capital Group, L.P.; Utendahl Capital Partners, L.P.; Wells Fargo Securities LLC; and William Blair & Co., LLC (collectively, the "Underwriter Defendants").

MF Global, Man Group, the Individual Defendants, and the Underwriter Defendants except for Lehman Brothers,[1] have moved

---

[1]   By Order dated November 13, 2008, the Court stayed the consolidated action against Lehman Brothers. pursuant to the Order Commencing Liquidation, dated September 19, 2008, and the automatic stay provisions of the Bankruptcy Code.

to dismiss the CACC pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons stated below, the Court grants the motion to dismiss of MF Global, the Individual Defendants, and the Underwriter Defendants in its entirety. The Court also grants the motion to dismiss of the Man Group in its entirety.

## I. BACKGROUND[2]

A.   PARTIES

1.   Plaintiffs

Lead plaintiffs are Iowa Public Employees' Retirement System; Policemen's Annuity & Benefit Fund of Chicago; Central States, Southeast, Southwest Areas Pension Fund; and State-Boston Retirement System (collectively, "Plaintiffs"). The CACC alleges that Plaintiffs purchased shares of MF Global "pursuant and/or traceable to the false and misleading Registration Statement and Prospectus and [were] damaged thereby." (CACC ¶¶ 22-25.) Plaintiffs purport to represent a class consisting of "all persons who purchased shares of MF Global common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with MF Global's IPO." (Id. ¶ 41.)

---

[2]   The facts below are taken from the CACC, which the Court accepts as true for the purpose of ruling on a motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Technology Fin. Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995)). Except where specifically quoted, no further reference to these documents will be made.

2.   <u>Defendants</u>

Before its IPO, MF Global was the brokerage unit of Man Group, a hedge fund.  Man Group retains an 18.6% stake in MF Global.  MF Global is a broker of exchange-listed futures and options, and "provides execution and clearing services for exchange-traded and over-the-counter derivative products, as well as for non-derivative foreign exchange products and securities in the cash market."  (CACC ¶ 26.)

The CACC alleges that, at all relevant times, the following Individual Defendants held the offices indicated below at MF Global and signed the registration statement (the "Registration Statement") and "thereby approved issuance of the Prospectus" (<u>id.</u> ¶¶ 28-34):

Davis: Chief Executive Officer and Director.

Butte: Chief Financial Officer and Director.

Carnwath: Non-Executive Chairman of the Board of Directors.

Smith: Chief Operating Officer, Deputy Chief Executive Officer, and Director.

Bates: Group Controller.

Steenkamp: Vice President of Corporate Financial Reporting, or Principal Accounting Officer.

Goldberg: Director.

-4-

The defendants identified above as Underwriter Defendants are named in the CACC as underwriters for the MF Global IPO.

B.   FACTUAL ALLEGATIONS

In the spring of 2007, Man Group announced that it would spin off its brokerage business through an IPO on the New York Stock Exchange, in the third quarter of 2007.  The Registration Statement for MF Global was filed on May 31, 2007.  The shares issued through the IPO began trading on July 19, 2007, and the IPO prospectus (the "Prospectus") was filed on July 20, 2007.

The Registration Statement and Prospectus described, among other things, the relationship between Man Group and MF Global, including the "group risk services agreement" between them "pursuant to which Man Group has agreed to provide [MF Global] with a license to use its global risk-management systems and processes it has used historically to provide [MF Global] with these services."  (CACC ¶ 49.)

The Registration Statement and Prospectus also described in general terms MF Global's risk management policies and procedures, noting that "limiting trades for our own account to matched-principal and hedging trades reduces the risk that our employees may execute trades for our account in excess of our exposure limits," but that "[n]evertheless, we are exposed to risks relating to employee misconduct."  (Id. ¶ 52.)  The

materials discussed MF Global's program for monitoring its employees and brokers, its risk management structure, its approach to risk, and its ability to minimize conflicts of interest and promote financial stability by generally refraining from proprietary trading.

In addition, the Registration Statement and Prospectus addressed various factors that might undermine MF Global's risk management efforts, including employee misconduct, human or technological failures, and lack of information.

On February 27, 2008, one of MF Global's registered representatives entered into 15,000 to 20,000 unauthorized contracts for wheat futures, exceeding his authorized trading limit and ultimately resulting in a $141.5 million loss for MF Global when those positions had to be liquidated.  MF Global held an investor conference call on February 28, 2008, during which Davis "acknowledged that existing internal controls could have stopped" the errant trades from being processed, but the controls "were turned off in a few cases to allow for speedier transactions by brokers at the firm who traded for themselves or took customer orders by phone."  (Id. ¶ 61, quoting Wall Street Journal, Feb. 29, 2009.)  Davis also stated that the representative in question had only one "historic customer" who had not traded in "some time."  (Id.)  Davis told investors that the representative "had not

-6-

circumvented any risk management procedures," that "in order to speed trades [MF Global] had allowed some internal terminals to not have the buying power control," and that such a policy was a "mistake."  (Id. ¶ 62.)

On February 28, 2008, MF Global's stock price dropped 28%, and dropped an additional 17% on February 29, 2008.  When MF Global announced its Fourth Quarter 2008 results in April 2008, it reported a pre-tax loss "from $55 million to $65 million primarily attributable to the recently expected bad debt provision."  (Id. ¶ 70.)  MF Global also announced two independent reviews, one of its proprietary order entry system and one of its overall risk management and control infrastructure, and detailed its efforts to upgrade its risk monitoring systems.

In June of 2008, MF Global filed with the Securities and Exchange Commission ("SEC") a Form 10-K for the fiscal year ending March 31, 2008, in which it disclosed two additional incidents that were the subject of investigations by the Commodity Futures Trading Commission ("CFTC").  MF Global also disclosed that it was cooperating in an investigation by the United States Attorney's Office for the Southern District of New York, the SEC, and the CFTC.

B.   PROCEDURAL HISTORY

The first of several complaints regarding the

representations in the Registration Statement and Prospectus and the alleged failures of risk management as demonstrated by MF Global's $141.5 million loss (the "Trading Incident") was filed on March 6, 2008.  Four additional complaints regarding the risk management system and the Trading Incident were subsequently filed, and the Court consolidated all of the actions for coordinated pretrial proceedings.  Plaintiffs then filed the CACC, alleging violations of § 11 and 12(a)(2) of the Securities Act against all Defendants, and violations of § 15 of the Securities Act against Man Group and the Individual Defendants.  All Defendants except for Lehman Brothers then moved to dismiss the CACC.

## II.   <u>LEGAL STANDARD</u>

A.   <u>MOTION TO DISMISS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. ---, 129 S. Ct. 1937, 1949 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief

-8-

above the speculative level." <u>Twombly</u>, 550 U.S. at 555.  The task of the court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  <u>In re Initial Pub. Offering Secs. Litig.</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).  The court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152 (2d Cir. 2002).

B.   <u>SECURITIES ACT OF 1933</u>

   1.   <u>Claims Under Sections 11 and 12(a)(2)</u>

   Section 11 of the Securities Act ("§ 11") lists the parties that purchasers of registered securities may hold liable if a registration statement contains an untrue statement of a material fact or omits to state a material fact necessary to make the statements therein not misleading.  This list includes any signer of a registration statement and any director of the issuer.  <u>See</u> 15 U.S.C. § 77k(a).  Section 12(a)(2) ("§ 12(a)(2)") imposes liability for selling or offering a security by means of a prospectus that includes an untrue statement of material fact or omits a material fact necessary to make such statements not misleading.  <u>See</u> <u>id.</u> § 77l(a)(2).  Thus, to state a cognizable claim under either §

-9-

11 or § 12(a)(2), Plaintiffs must show that the Registration Statement or the Prospectus for MF Global's July 2007 IPO contained an untrue statement of material fact or omitted to state a material fact that was required to be stated therein or was necessary to make the statements therein not misleading.[3]

In analyzing the Plaintiffs' §§ 11 and 12(a)(2) claims, the Court is guided by several applicable principles, including materiality and the "bespeaks caution" doctrine. The Court may also consider the issue of loss causation.

a.   Materiality

Under §§ 11 and 12(a)(2), a misrepresentation of material fact in a securities registration statement or prospectus occurs when an investor would attach importance to the misrepresentation in making an investment decision. See Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988); see also ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009). Similarly, an

---

[3]  A claim under § 11 also requires a showing that a defendant "has an affirmative duty to disclose the information but fails to do so." Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662, 668 (S.D.N.Y. 2008). The content of the duty "depends largely on the itemized disclosures required by the securities laws and the regulations promulgated thereunder." Id. A plaintiff who fails to plead a § 11 claim necessarily fails to plead a § 12(a)(2) claim as well. See Lin v. Interactive Brokers Group, Inc., 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008) (citing cases). Because the Court finds that Plaintiffs' claims fail based on failure to state a claim, lack of loss causation, or lack of materiality, the Court will not address the issue of whether Defendants had a duty to disclose.

omission is material if there is a substantial likelihood that the "disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of the information made available." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449 (1976); ECA, Local 134, 553 F.3d at 197.

A court may dismiss a claim on the ground that a misstatement or an omission in a registration statement or prospectus was not material. However, materiality is a mixed question of law and fact, and on a Rule 12(b)(6) motion, "a complaint may not properly be dismissed ... on the ground that the alleged misstatement or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." ECA, Local 134, 553 F.3d at 197 (quoting Ganino v. Citizens Utils. Co., 228 F.3d 154, 162 (2d Cir. 2000)).

b.   "Bespeaks Caution" Doctrine

Under the "bespeaks caution" doctrine, certain alleged misrepresentations in a stock offering are "immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language" in the relevant offering.  See Halperin v. eBanker USA.com, Inc., 295 F.3d 352, 357 (2d Cir. 2002).

Vague disclosures of general risks will not protect defendants
from liability.  Instead, the relevant cautionary language
must be "prominent and specific," and must directly address
"the risk that plaintiffs claim was not disclosed."  <u>See</u> <u>Olkey</u>
<u>v. Hyperion 1999 Term Trust, Inc.</u>, 98 F.3d 2, 5 (2d Cir.
1996).  Since most, if not all, securities offerings contain
cautionary words, a district court must pay close attention to
the question of whether the language provided matches the risk
addressed.  <u>See</u> <u>Halperin</u>, 295 F.3d at 359.

In assessing whether statements made in a prospectus are
materially misleading, the prospectus must be read as a whole,
not selectively or in a piecemeal fashion.  <u>See</u> <u>Olkey</u>, 98 F.3d
at 5.  As the Second Circuit explained in <u>Halperin</u>,

> The touchstone of the inquiry is not whether isolated
> statements within a document were true, but whether
> defendants' representations or omissions, considered
> together and in context, would affect the total mix of
> information and thereby mislead a reasonable investor
> regarding the nature of the securities offered.

295 F.3d at 357.

The appropriate approach in applying the "bespeaks
caution" doctrine requires a two-step analysis: 1) "identify
the allegedly undisclosed risk"; and 2) "read the allegedly
fraudulent materials – including the cautionary language – to
determine if a reasonable investor could have been misled into
thinking that the risk that materialized and resulted in his
loss did not actually exist."  <u>Id.</u> at 359; <u>In re FBR Inc.</u>

Secs. Litig., 544 F. Supp. 2d 346, 361 (S.D.N.Y. 2008) (citing Halperin); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 223 (S.D.N.Y. 2008) (same).

There is Second Circuit precedent stating that the "bespeaks caution" doctrine applies only to "forward-looking, prospective" representations or omissions concerning such topics. See P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 96-97 (2d Cir. 2004) (following other circuits in limiting the "bespeaks caution" doctrine to "forward-looking, prospective representations"); Heller v. Goldin Restructuring Fund, L.P., 590 F. Supp. 2d 603, 617 (S.D.N.Y. 2008) (noting that the "bespeaks caution" doctrine "only applies to forward-looking statements, and not to misrepresentations of present or historical fact"); Scantek Med., Inc. v. Sabella, 583 F. Supp. 2d 477, 496 (S.D.N.Y. 2008) (observing that "bespeaks caution" doctrine applies to "forward-looking statements").

However, even after the Second Circuit adopted the forward-looking limitation in P. Stoltz Family, courts in the Second Circuit have continued to apply the "bespeaks caution" doctrine without considering whether the alleged misrepresentations or omissions were forward-looking or dealt with historical or present facts. See, e.g., Rombach v. Chang, 355 F.3d 164, 172-74 (2d Cir. 2004) (finding that alleged failure to disclose integration and liquidity problems

was protected by the "bespeaks caution" doctrine); Coronel v. Quanta Capital Holdings, Ltd., No. 07 Civ. 1405, 2009 WL 174656, at *17-18 (S.D.N.Y. Jan. 26, 2009) (slip copy) (applying the "bespeaks caution" doctrine to loss estimates in a prospectus and registration statement); Edison Fund, 551 F. Supp. 2d at 223-24 (applying the "bespeaks caution" doctrine to an alleged failure to disclose defendant's "inability to achieve yields and meet redemption demands because of the absence of the historic secondary market"); Initial Pub. Offering, 383 F. Supp. 2d at 582-83 (applying the "bespeaks caution" doctrine to a list of factors in prospectus used to set offering price of IPO).

The Court notes that Plaintiffs in securities fraud actions can easily characterize many alleged misrepresentations or omissions regarding the risk of future negative events as statements that simply concern discrete present or historical fact. For example, an allegation that a corporation failed to disclose the risk that it would default on outstanding financial obligations in the future could just as easily be characterized as a failure to disclose present or historical financial instability. Because there is some ambiguity in the case law regarding the applicability of the "bespeaks caution" doctrine, and because a skillful plaintiff may skirt application of the doctrine through artful

pleading, the Court will examine whether Plaintiffs' allegations concerning representations or omissions of present or historical fact touch upon forward-looking or prospective concerns. If Plaintiffs are essentially alleging that Defendants failed to disclose the risk of a future negative event, the Court will continue with the "bespeaks caution" analysis and perform the two-step inquiry approved of in Halperin.

    c.   Loss Causation

Although loss causation is not a formal element of a claim under §§ 11 or 12(a)(2), a lack of loss causation that is apparent on the face of the complaint can be a successful defense in a motion to dismiss. See In re Global Crossing, Ltd. Secs. Litig., 471 F. Supp. 2d 338, 347-48 (S.D.N.Y. 2006); In re Merrill Lynch & Co., Inc. Research Reports Secs. Litig., 272 F. Supp. 2d 243, 253-54 (S.D.N.Y. 2003) (applying loss causation defense to claims under §§ 11 and 12(a)(2) on motion to dismiss). A defense of lack of loss causation must show that the subject of the alleged misrepresentation or omission was not the cause of the loss complained of by a plaintiff, or that whatever risks were concealed by the alleged misstatement or omission did not result in the loss in question. See Lentell v. Merrill Lynch & Co., Inc., 396 F.3d

161, 173 (2d Cir. 2005); <u>Global Crossing</u>, 471 F. Supp. 2d at
348.

    2.  <u>Section 15 Claims</u>

    Section 15 of the Securities Act ("§ 15") provides for
liability of control persons for violations of §§ 11 or 12 of
the Securities Act.  <u>See</u> 15 U.S.C. § 77o.  Claims under § 15
"depend upon an adequate pleading by Plaintiffs with respect
to §§ 11 and 12(a)(2)."  <u>Miller v. Lazard</u>, 473 F. Supp. 2d
571, 586 (S.D.N.Y. 2007) (<u>citing</u> <u>In re Merrill Lynch & Co.,
Inc. Research Reports Secs. Litig.</u>, 289 F. Supp. 2d 429, 437
(S.D.N.Y. 2003)).

## III. **DISCUSSION**

### A.  <u>SECTION 11 AND 12(a)(2)CLAIMS</u>

    Plaintiffs have alleged violations of §§ 11 and 12(a)(2)
against all Defendants, who argue that the Registration
Statement and Prospectus were not materially false and
misleading, and that in any event, Plaintiffs' losses were not
caused by the alleged misrepresentations and omissions.  Man
Group also contends that it should not be subject to liability
as an issuer or underwriter.  The Court will analyze the
allegedly false and misleading misrepresentations and
omissions in two groups: those regarding specific features of
MF Global's business, and those regarding the strength of MF

Global's risk management system generally.  Because the Court finds that Plaintiffs' claims fail even when applying the standards of Federal Rule of Civil Procedure 8 as construed by Iqbal and Twombly, the Court will not discuss the applicability of Federal Rule of Civil Procedure 9(b) and whether the Plaintiffs' claims sound in fraud, such that they must plead with more particularity.  See Rombach, 355 F.3d at 171.  Nor will the Court address whether Man Group should be subject to liability as an issuer or underwriter.

### 1.  Specific Misstatements or Omissions

The CACC alleges several specific misstatements or omissions.  These alleged misrepresentations concern the types of trades conducted by MF Global; limits on and access to client accounts; and a lack of necessary improvements after a 2005 acquisition.  The Court will address each set of statements in turn.

### a.  Types of Trades Conducted by MF Global

Plaintiffs claim that statements in the Registration Statement and Prospectus regarding MF Global's trading activities were false and misleading.  The Court disagrees. With respect to the types of trades conducted by MF Global, the Prospectus states, "Overall, we believe that our exposure to market risk is substantially lower than it would be if we

-17-

took positions for our own account primarily for directional purposes rather than primarily to facilitate client trades on a matched basis and to hedge and manage our corporate assets." (Declaration of David B. Anders In Support of the MF Global Defendants' Motion to Dismiss, Ex. B ("Prospectus"), at 27.) The Prospectus also notes, "As a specialty broker, we generally do not trade for our own account, except to facilitate client trades on a matched-principal basis and to hedge the foreign currency and interest rate risk inherent in our global operations," and that "[w]e generally do not engage in directional trading, meaning that we do not take positions for our own account in order to profit from anticipated changes in market prices." (Id. at 115). Plaintiffs allege that these statements were false and misleading because they omitted any mention of traders' activities for their "own individual accounts," (CACC ¶ 57d), and the risks involved, including MF Global's responsibility for covering any losses in connection with those trades.

The Court finds that the statements described above are not false or misleading because although the Prospectus states that MF Global "generally do[es] not ... take positions for [its] own account," (Prospectus at 115), this statement does not foreclose the possibility that MF Global will sometimes take positions for its own account. In fact, the Prospectus

identifies particular situations in which MF Global does trade
for its own account, including "matched principal and hedging
trades" and trades "to hedge ... foreign currency and interest
rate risk."  (Id.)  In addition, the Prospectus explicitly
mentions the possibility that traders may trade for their own
accounts: "We are exposed to risks relating to employee
misconduct.  Among other things, our employees could execute
unauthorized transactions for our clients or for their own or
any of our accounts."  (Id. at 31) The Court evaluates the
Prospectus as a whole. See Olkey, 98 F.3d at 5.  The
statements in the Prospectus representing that MF Global
usually focuses on trading on behalf of clients or to hedge
risk are not misleading simply because MF Global has also
engaged in trades on its own behalf, especially when this
activity and the risks involved were explicitly disclosed
elsewhere in the Prospectus.  See id. at 9.  The motion to
dismiss is therefore granted with respect to these alleged
misrepresentations and omissions.

      b.   <u>Limits on and Access to Client Accounts</u>

     Plaintiffs further allege that Defendants failed to
disclose the material fact that traders did not have limits
when trading for clients, and that with the proper password
anyone could access client accounts and trade in them at any
time.  However, the Court finds that these alleged omissions

cannot form the basis of a viable § 11 or § 12(a)(2) claim because Plaintiffs cannot demonstrate loss causation with respect to these omissions.

As noted above, loss causation is not a formal element of a claim under § 11 or § 12(a)(2), but a lack of loss causation that is apparent on the face of the complaint may constitute a successful defense on a motion to dismiss.  See Merrill Lynch Research Reports, 272 F. Supp. 2d at 253-54.  Here, it is clear from the face of the CACC that the Trading Incident that sparked the sharp drop in MF Global's stock price, which caused the losses that Plaintiffs complain of, had nothing to do with MF Global's trading for clients or trading in or access to client accounts.  Client accounts simply were not involved in the Trading Incident of February 2008.  Rather, the Trading Incident involved trades in a non-client account. The Court therefore grants the motion to dismiss with respect to these alleged misrepresentations and omissions.

c.   Lack of Post-Acquisition Improvements

Plaintiffs allege that several material facts regarding "the acquisition of Refco in November 2005," (CACC ¶¶ 57o, p), should have been disclosed.  Plaintiffs maintain that MF Global's risk management system was not updated adequately to accommodate increased trading from Man Financial's acquisition of Refco, that brokers employed as a result of the acquisition

-20-

were not adequately screened, and that these facts should have
been disclosed in the Registration Statement and the
Prospectus.  The Court finds that Plaintiffs have failed to
"plead[] factual content that allows the court to draw the
reasonable inference that the defendant[s] [are] liable" for
§ 11 or § 12(a)(2) violations, with respect to the alleged
post-acquisition omissions.  <u>Iqbal</u>, 129 S. Ct. at 1949.  Man
Financial was presumably the entity responsible for the
"acquisition of Refco in November 2005," and the Court cannot
discern from the face of the CACC the precise business entity
acquired or the kinds of businesses or assets involved in the
acquisition.  Plaintiffs have not made any factual averments
that the Refco acquisition imposed a burden of any kind on the
risk management system of Man Financial or MF Global, or that
any brokers employed as a result were of lesser quality than
the brokers already employed by Man Financial.  Plaintiffs
merely allege that MF Global's risk management system and
broker hiring practices were not upgraded and should have
been.  Without more, the Court finds that these allegations
fail to "raise a right to relief above the speculative level."
<u>Twombly</u>, 550 U.S. at 555.  The motion to dismiss with respect
to these claims is therefore granted.

    2.   <u>Misrepresentations and Omissions Regarding MF
       Global's Risk Management System</u>

The remainder of the misrepresentations and omissions alleged by Plaintiffs all concern MF Global's risk management system. The Prospectus states that MF Global's risk-management methodology focuses on monitoring MF Global's "potential exposure to loss in the event that the client defaults – and adjusting that client's margin requirements accordingly," which requires that MF Global "continuously monitor and evaluate the size and nature of [its] clients' positions and the associated risks." (Prospectus at 28.) The Prospectus also states, "We monitor our clients' open positions – which represent our principal risk exposure – and margin levels on a real time basis, with both sophisticated technical systems as well as continuous oversight from our highly experienced risk managers." (Id. at 117-18.) The Prospectus further describes the monitoring of clients' open positions, stress-tests of client positions "under hypothetical 'worst-case' conditions that reflect actual historical data from periods extending back a decade or longer," and the adjustments to client margin levels made "both during and at the end of each trading day." (Id. at 118.)

Plaintiffs maintain that these statements were materially false or misleading because trades carried out by traders on behalf of MF Global were not monitored in the same way as

-22-

clients' trading activities, and that this lack of oversight should have been disclosed.  Plaintiffs allege that traders were able to trade without regard to margin requirements, collateral, or ability to pay, and that margin control consisted of a red-flag warning that would not actually prevent a suspect trade.

Plaintiffs take issue with additional statements regarding MF Global's risk management system.  The Prospectus describes MF Global's relationship with Man Group and the continuing "group risk services agreement" between the two companies, through which MF Global licensed Man Group's "global risk-management systems and processes [that] it has used historically to provide us with these services." (Id. at 183.)  The Prospectus also notes, "We have an active program for monitoring and verifying that our employees and introducing brokers comply with specified procedures," (id. at 32), and "[w]e have a comprehensive risk management structure and processes to monitor, evaluate and manage the principal risks we assume in conducting our business," (id. at 94). The Prospectus goes on to state, "We actively manage risk on a global basis with a centralized, hands-on approach," (id. at 117), and "[w]e have established a robust, globally integrated risk-management infrastructure to monitor, evaluate and manage the principal risks we assume in conducting our business

around the world," (id. at 136).  The Prospectus also describes the duties of MF Global's Chief Risk Officer, who oversees all aspects of the risk management infrastructure and reports directly to the Chief Operating Officer and Deputy Chief Executive Officer.  The Prospectus refers to "specialist teams that continuously monitor our risk exposures around the world" and highlights MF Global's ability to "take any necessary remedial action in a timely manner."  (Id.)

Plaintiffs claim that all of these statements were materially false and misleading because MF Global's risk management system was "deficient by design and in practice." (CACC ¶ 13.)  Plaintiffs argue that these claims regarding the risk management system at MF Global are false and misleading because that system was not disciplined, comprehensive, or effective, and did not conform to industry practices. Plaintiffs maintain that the MF Global employees involved in risk management were not capable of "providing adequate Risk Management," (id. ¶ 57m), particularly in regards to real-time monitoring of trades outside of business hours.  Plaintiffs also contend that the representations about risk management were false and misleading because traders were able to trade in violation of MF Global's risk management controls, as those controls could be turned off, ignored, or overridden. Plaintiffs point to the February 2008 Trading Incident and

allege that traders were able to trade in violation of MF Global's risk management controls because those controls could be turned off, ignored, or overridden, and that traders were not properly monitored or limited in their trading. Plaintiffs also argue that "MF Global suspended or eliminated its own internal risk management technical and human controls and supervision." (Id. ¶ 57b.)

The Court notes that Plaintiffs do not offer any factual averments showing that any of the statements about specific practices or aspects of the risk management system were false. Plaintiffs therefore allege only material omissions, not affirmative misrepresentations, except with regard to the overall quality of the risk management system. Plaintiffs' claims regarding the risk management system basically amount to an allegation that MF Global's risk management system was not as robust as described in the language quoted from the Prospectus. Plaintiffs argue that the risks were not assessed or monitored properly, and that the supposedly "centralized, hands-on approach," (Prospectus at 117), and the "robust, globally integrated risk-management infrastructure," (id. 136), did not exist. The Court finds that Plaintiffs' claims are subject to the "bespeaks caution" doctrine, as explained below.

    a.   "Bespeaks Caution" Doctrine

Because Plaintiffs contend that Defendants failed to disclose systemic or specific weaknesses in the risk management system, Plaintiffs are essentially complaining that Defendants failed to disclose that there was a higher or more specific risk that the MF Global risk management system would fail at some point in the future. The Court finds that the Prospectus contained sufficient warnings regarding the potential for the risk management system to fail, such that the misrepresentations and omissions Plaintiffs cite are immaterial as a matter of law, pursuant to the "bespeaks caution" doctrine. See Halperin, 295 F.3d at 357.

As discussed above, the case law is ambiguous with respect to whether the "bespeaks caution" doctrine applies only to forward-looking or prospective statements. Cf. P. Stolz Family, 355 F.3d at 96-97 (following other circuits in limiting "bespeaks caution" doctrine to "forward-looking, prospective representations"); Rombach, 355 F.3d at 172-74 (finding that alleged failure to disclose integration and liquidity problems was protected by the "bespeaks caution" doctrine). The Court finds that it is appropriate to apply the "bespeaks caution" doctrine here because Plaintiffs' objections to misrepresentations about specific or general shortcomings in MF Global's risk management system that existed at the time the Prospectus was issued are, in fact,

objections to Defendants' alleged failure to disclose the possibility that the risk management system might be unable to prevent future negative outcomes. The Court declines to allow Plaintiffs to evade application of the "bespeaks caution" doctrine through pleading that fixates on present or historical facts about the risk management system when what Plaintiffs are fundamentally displeased with is what they characterize as the Prospectus's overall presentation of MF Global's current risk management system as strong and robust.

When analyzing a claim of misrepresentation in the registration or sale of securities involving cautionary language that could merit the application of the "bespeaks caution," the Court must first "identify the allegedly undisclosed risk." Halperin, 295 F.3d at 359. Here, the allegedly undisclosed risk was that MF Global's risk management system would fail and thus subject MF Global to financial losses of some kind.

Under Halperin, the next step in the "bespeaks caution" analysis is to "read the allegedly fraudulent materials – including the cautionary language – to determine if a reasonable investor could have been misled into thinking that the risk that materialized and resulted in his loss did not actually exist." Id. The Court finds that the representations of the MF Global risk management system in the

Registration Statement and Prospectus were not materially false or misleading because the those materials made it clear that the MF Global risk management system was not infallible. Under the "bespeaks caution" doctrine, the Court finds that these alleged misrepresentations and omissions are "immaterial as a matter of law because it cannot be said that any reasonable investor could consider them important in light of adequate cautionary language" in the Prospectus. Id. at 357.

Pages 15 through 44 of the Prospectus describe various "Risk Factors" that could affect MF Global, including "Risks Related to Our Capital Needs and Financial Position," which includes the subheading, "Our risk-management methods might not be effective, which could negatively impact our business." (Prospectus at 28.) This subsection states, among other things, "we rely on a combination of technical and human controls and supervision that are subject to error and potential failure, the challenges of which are exacerbated by the 24-hour-a-day, global nature of our business." (Id. at 28.) The Prospectus goes on to state, "our risk-management methods may prove to be ineffective because of their design, their implementation or the lack of adequate, timely information. If our risk-management efforts are ineffective, we could suffer losses that could have a material adverse effect on our financial condition or operating results."

(Id.)   The Prospectus also notes, "Employee or introducing broker misconduct could subject us to financial losses or regulatory sanctions and seriously harm our reputation." (Id. at 32.)

The Prospectus therefore described precisely what happened when an MF Global trader made unauthorized trades for his own account, resulting in $141.5 million in losses to MF Global.  If it is true that the controls that were supposed to limit trades or traders' discretion were easily or purposely disabled, or that traders' activities in their own accounts were not monitored in the same way that trades for clients were, these are flaws in the design or implementation of the risk management system that rendered it unable to prevent the February 2008 Trading Incident that Plaintiffs have pointed to as precipitating the drop in MF Global's stock price.  This is an outcome that should not surprise a reasonable reader of the Prospectus.   In light of the cautionary language of the Prospectus, a reasonable investor could not have been "misled into thinking that the risk" of a faulty risk management system "did not actually exist."   Halperin, 295 F.3d at 359.

b.   Failure to State a Claim

Even if the "bespeaks caution" doctrine should not apply, the Court would still find that Plaintiffs have failed to state a claim, with respect to the allegations regarding the

risk management system.    Plaintiffs have made no factual averments that the MF Global risk management system exhibited the flaws that Plaintiffs have described at the time that the Prospectus was issued.   Plaintiffs' allegations are based on information about the MF Global risk management system that was disclosed after the February 2008 Trading Incident.   Even if it is true that in February 2008 trades carried out by traders on behalf of MF Global were not monitored in the same way as clients' trading activities; that traders were able to trade without regard to margin requirements, collateral, or ability to pay; and that margin control consisted of a red-flag warning that would not actually prevent a suspect trade, there is nothing to indicate that this was the state of affairs in July 2007, when the Prospectus was issued.   In other words, Plaintiffs have offered no factual averments that the alleged misrepresentations and omissions were, in fact, false or misleading at the time the Prospectus was issued. Plaintiffs have thus failed to provide "sufficient factual matter, accepted as true" to survive a motion to dismiss. Iqbal, 129  S. Ct. at 1949.

Prompted by the Trading Incident, Plaintiffs have pointed to statements in the Prospectus that tout the strengths of the MF Global risk management system, focusing on the Prospectus's alleged failure to disclose any and all shortcomings of that

system.  Plaintiffs are "engaging in retrospective pleading" by "question[ing] the accuracy of the offering statement in light of the much-later materialization" of a risk management problem.  Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662, 672 (S.D.N.Y. 2008) (finding that allegations of problems with quality control in the manufacture of semiconductor chips amounted to "pleading by hindsight" when a disclosure covered the precise risk that subsequently appeared).  Reading the Prospectus as a whole, see Olkey, 98 F.3d at 5, the Court finds that nothing in the Registration Statement or the Prospectus guarantees or certifies the effectiveness of MF Global's risk management system.  The Prospectus clearly warned that the risk management system could prove to be inadequate, and "[a]n accurate statement coupled with the precise disclosure of a risk later realized cannot adequately form the basis for a securities claim." Panther Partners, 538 F. Supp. 2d at 672.  The Court concludes that even if the "bespeaks caution" doctrine does not apply to the alleged misrepresentations and omissions regarding the MF Global risk management system, Plaintiffs have nonetheless failed to state a claim under §§ 11 and 12(a)(2), because the Court cannot find that the CACC has "raise[d] a right to relief above the speculative level."   Twombly, 550 U.S. at

555.  The motion to dismiss is therefore granted as to the remaining alleged misrepresentations and omissions.

B.   <u>SECTION 15 CLAIMS</u>

Because Plaintiffs have failed to plead a primary violation of §§ 11 or 12(a)(2), their claims under § 15 against the Individual Defendants and Man Group must fail as well.  <u>See</u> <u>Miller</u>, 473 F. Supp. 2d at 586.  Defendants' motion to dismiss is therefore granted as to the § 15 claims.

C.   <u>LEAVE TO REPLEAD</u>

Defendants have asked the Court to deny Plaintiffs leave to replead their claims.  A court "should freely give leave" to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The CACC is the first complaint submitted by the Plaintiffs in their capacity as lead plaintiffs in this action.  However, the Court has determined that Plaintiffs' allegations that the disclosures about the MF Global management system were materially false or misleading cannot succeed because the Prospectus contained adequate warnings that the risk management system could turn out to be ineffective, and because Plaintiffs have not offered any facts to suggest that the statements were actually false or misleading.  It is therefore possible that a repleading would be futile if it were based upon the same sort of alleged

misrepresentations or omissions regarding the risk management system.  The Court will grant leave to replead upon a request by Plaintiffs plausibly showing that such a repleading would not be futile.  Plaintiffs shall submit any such request within twenty days of this Order herein.

## IV. <u>ORDER</u>

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 130) of defendants MF Global, Ltd. ("MF Global"); Kevin R. Davis ("Davis"); Amy S. Butte ("Butte"); Alison J. Carnwath ("Carnwath"); Christopher J. Smith ("Smith"); Christopher Bates ("Bates"); Henri J. Steenkamp ("Steenkamp"); and Edward L. Goldberg ("Goldberg"), as joined by defendants Citigroup Global Markets, Inc.; J.P. Morgan Securities, Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; UBS Securities, LLC; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities, Inc.; Goldman, Sachs & Co.; Morgan Stanley & Co., Inc.; ABN AMRO Rothschild LLC; Banc of America Securities LLC; BMO Capital Markets Corp.; HSBC Securities (USA), Inc.; Keefe, Bruyette & Woods, Inc.; Sandler O'Neill & Partners, L.P.; Wachovia Capital Markets, LLC; Blaylock & Co., Inc.; Calyon Securities (USA), Inc.; Chatsworth Securities LLC; CL King & Associates, Inc.; Dowling & Partners Securities LLC; E*TRADE Securities LLC; Fortis Securities LLC; Guzman & Co.; ING Financial Markets LLC; Jefferies & Co., Inc.; Lazard Capital Markets LLC; M.R. Beal & Co.; Mizuho Securities USA, Inc.; Muriel Siebert & Co., Inc.; Oppenheimer & Co., Inc.; Piper Jaffray & Co.; Raymond James & Associates, Inc.; RBC Capital Markets Corp.; Robert W. Baird & Co., Inc.; Samuel A. Ramirez & Co., Inc.; SMH Capital

-34-

Inc.; Stifel, Nicolaus & Co., Inc.; Sun Trust Capital Markets, Inc.; The Williams Capital Group, L.P.; Utendahl Capital Partners, L.P.; Wells Fargo Securities LLC; and William Blair & Co., LLC (Docket No. 135) to dismiss the Corrected Consolidated Class Action Complaint ("CACC") is GRANTED; and it is further

**ORDERED** that the motion (Docket No. 137) of defendant Man Group, PLC to dismiss the CACC is GRANTED; and it is further

**ORDERED** that plaintiffs Iowa Public Employees' Retirement System; Policemen's Annuity & Benefit Fund of Chicago; Central States, Southeast, Southwest Areas Pension Fund; and State-Boston Retirement System (collectively, "Plaintiffs") may submit a request for leave to amend their complaint within twenty days of the date of this Order. Such a request must make a plausible showing that repleading will not be futile.

The Clerk of the Court is directed to withdraw any pending motions and to close this case.

**SO ORDERED:**

Dated:   New York, New York
         16 July 2009

VICTOR MARRERO
U.S.D.J.

-35-