# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

|  |  |  |
|---|---|---|
| MICHAEL RUBIN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 08 Civ. 2233 (VM) |
| | : | |
| MF GLOBAL, LTD., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION  FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT, (II) CERTIFICATION OF THE CLASS FOR PURPOSES OF SETTLEMENT, (III) APPROVAL OF NOTICE TO THE CLASS, AND (IV) SCHEDULING OF A FINAL APPROVAL HEARING

**BARRACK, RODOS & BACINE**

Mark R. Rosen
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215) 963-0838

William J. Ban
425 Park Avenue, 31st Floor
New York, NY 10022
Tel: (212) 688-0782
Fax: (212) 688-0783

*Co-Lead Counsel for*
*Lead Plaintiffs and the Class*

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Carol V. Gilden
190 S. LaSalle Street
Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370
Fax: (312) 357-0369

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Co-Lead Counsel for*
*Lead Plaintiffs and the Class*

**LABATON SUCHAROW LLP**

Christopher J. Keller
Jonathan Gardner
Angelina Nguyen
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-047

*Additional Counsel for Plaintiff*
*State-Boston Retirement System*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND OF THE LITIGATION ............................................................... 3

ARGUMENT .......................................................................................................... 7

I.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 7

II.  CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS
     APPROPRIATE ............................................................................................. 10

     A.  The Class Satisfies the Requirements of Rule 23(a). ...................... 11

         1.  The Class Members Are Too Numerous to Be Joined ........................ 11

         2.  There Are Common Questions of Law and Fact. ............................... 12

         3.  The Class Representatives' Claims Are Typical of Those of the Class ............... 13

         4.  The Class Representatives Will Fairly and Adequately Protect the Interest
             of the Class. ................................................................................ 14

     B.  The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3). ........... 15

         1.  Common Legal and Factual Questions Predominate. ........................... 15

         2.  A Class Action is Superior to Other Methods of Adjudication. .......................... 16

III. NOTICE TO THE CLASS SHOULD BE APPROVED. .................................................. 18

CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)...........................................................................................11, 15, 16, 18

*In re Blech Sec. Litig.,*
    187 F.R.D. 97 (S.D.N.Y. 1999) ......................................................................................16, 17

*Cent. States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care, LLC,*
    504 F.3d 229 (2d Cir. 2007)............................................................................................11, 12

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974).....................................................................................................8

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995).....................................................................................................11

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001).......................................................................................................9

*In re Delphi Corp. Sec., Derivative & ERISA Litig.,*
    248 F.R.D. 483 (E.D. Mich. 2008) ..........................................................................................9

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006)...................................................................................................11

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d Cir. 1992)...................................................................................................15

*In re Global Crossing Sec. & ERISA Litig.,*
    225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................................19

*In re Globalstar Sec. Litig.,*
    No. 01 Civ. 1745 (PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ................................12

*In re Initial Pub. Offering Sec. Litig.,*
    226 F.R.D. 186 (S.D.N.Y. 2005) .........................................................................................7, 8

*In re Initial Pub. Offering Sec. Litig.,*
    243 F.R.D. 79 (S.D.N.Y. 2007) ...................................................................................8, 12, 16

*In re Interpublic Sec. Litig.,*
    Nos. 02-6527, 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)....................................7

*Lapin v. Goldman Sachs & Co.,*
 254 F.R.D. 168 (S.D.N.Y. 2008) ........................................................................12

*In re Marsh & McLennan Cos. Sec. Litig.,*
 No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..........10, 14, 15, 16, 17

*In re Monster Worldwide, Inc. Sec. Litig.,*
 251 F.R.D. 132 (S.D.N.Y. 2008) ........................................................................17

*In re NASDAQ Market-Makers Antitrust Litig.,*
 176 F.R.D. 99 (S.D.N.Y. 1997) ............................................................................8

*In re Oxford Health Plans, Inc., Sec. Litig.,*
 191 F.R.D. 369 (S.D.N.Y. 2000) ...........................................................12, 13, 15

*In re PaineWebber Ltd. P'ships Litig.,*
 147 F.3d 132 (2d Cir. 1998)..................................................................................7

*In re Polaroid ERISA Litig.,*
 240 F.R.D. 65 (S.D.N.Y. 2006) ..........................................................................15

*In re Prudential Sec. Inc. Ltd. P'ships Litig.,*
 163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................8, 10

*Robidoux v. Celani,*
 987 F.2d 931 (2d Cir. 1993)........................................................................11, 14

*Robinson v. Metro-N. Commuter R.R. Co.,*
 267 F.3d 147 (2d Cir. 2001)................................................................................12

*Teachers' Ret. Sys. of La. v. ACLN Ltd.,*
 No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) .......................12, 14

*In re Telik, Inc. Sec. Litig.,*
 576 F. Supp. 2d 570 (S.D.N.Y. 2008)....................................................................9

*In re Vivendi Sec. Litig.,*
 242 F.R.D. 76 (S.D.N.Y. 2007) ..........................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
 396 F.3d 96 (2d Cir. 2005).............................................................................7, 18

*In re Warner Chilcott Ltd. Sec. Litig.,*
 No. 06 Civ. 11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................19

*Weinberger v. Kendrich,*
 698 F.2d 61 (2d Cir. 1982)..................................................................................10

## STATUTES AND RULES

Fed. R. Civ. P. 23 ...............................................................................................3, 11, 18, 19

Fed. R. Civ. P. 23(a) ......................................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)...................................................................................... *passim*

Pub. L. 104-67, 109 Stat. 737 ...................................................................................3, 4

15 U.S.C. § 77k ........................................................................................................4, 13

15 U.S.C. § 77l .........................................................................................................4, 13

15 U.S.C. § 77o ........................................................................................................4, 13

15 U.S.C. § 77z-1(a)(7).............................................................................................3, 18

Lead Plaintiffs the Iowa Public Employees' Retirement System, the Policemen's Annuity & Benefit Fund of Chicago, the Central States, Southeast and Southwest Areas Pension Fund, and the State-Boston Retirement System (collectively, "Lead Plaintiffs"[1]) respectfully submit this memorandum of law in support of their unopposed motion for: (i) preliminary approval of the settlement ("Settlement") of this securities class action (the "Litigation") against the Settling Defendants;[2] (ii) certification of the proposed Settlement Class for purposes of the Settlement; (iii) approval of the form and manner of notice to putative Class Members; and (iv) the scheduling of a hearing (the "Settlement Hearing") on final approval of the Settlement  and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.

## INTRODUCTION

Lead Plaintiffs have reached an agreement to settle this securities class action against the Settling Defendants, as provided in the Stipulation and Agreement of Settlement, dated as of August 10, 2011.  The proposed Settlement provides a substantial monetary benefit to the Class

---

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation and Agreement of Settlement (the "Stipulation"), dated August 10, 2011, and attached as Exhibit 1 to the Declaration of Mark R. Rosen, dated August 11, 2011, filed herewith ("Rosen Declaration").

[2] The Settling Defendants are: MF Global, Ltd. (n/k/a MF Global Holdings Ltd.) ("MF Global" or the "Company"), Man Group plc ("Man Group"), Man Group UK Ltd. ("Man UK"), Kevin R. Davis ("Davis"), Amy S. Butte ("Butte"), Alison J. Carnwath ("Carnwath"), Christopher J. Smith ("Smith"), Christopher Bates ("Bates"), Henri J. Steenkamp ("Steenkamp"), and Edward L. Goldberg ("Goldberg") (Davis, Butte, Carnwath, Smith, Bates, Steenkamp and Goldberg are collectively the "Individual Defendants"), Citigroup Global Markets Inc., J.P. Morgan Securities Inc. (n/k/a J.P. Morgan Securities LLC), Merrill Lynch, Pierce, Fenner & Smith, Incorporated, UBS Securities LLC, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., Morgan Stanley & Co. Incorporated, ABN AMRO Rothschild LLC, Banc of America Securities LLC, BMO Capital Markets Corp., HSBC Securities (USA) Inc., Keefe, Bruyette & Woods, Inc., Sandler O'Neill & Partners, L.P., Wachovia Capital Markets, LLC, Blaylock & Co. Inc., Calyon Securities (USA) Inc. (n/k/a Crédit Agricole Securities (USA) Inc.), Chatsworth Securities LLC, CL King & Associates, Inc., Dowling & Partners Securities, LLC, E*TRADE Securities LLC, Fortis Securities LLC, Guzman & Co., ING Financial Markets, LLC, Jefferies & Co., Inc., Lazard Capital Markets LLC, M.R. Beal & Co., Mizuho Securities USA Inc., Muriel Siebert & Co., Inc., Oppenheimer & Co. Inc., Piper Jaffray & Co., Raymond James & Associates, Inc., RBC Capital Markets Corp., Robert W. Baird & Co. Inc., Samuel A. Ramirez & Co., Inc., SMH Capital Inc. (n/k/a Sanders Morris Harris Inc.), Stifel, Nicolaus & Co., Inc., SunTrust Capital Markets, Inc. (n/k/a SunTrust Robinson Humphrey, Inc.), The Williams Capital Group, L.P., Utendahl Capital Partners, L.P., Wells Fargo Securities, LLC, and William Blair & Co., LLC (collectively, the "Underwriter Defendants").

of $90 million in cash.  The Settlement, if approved, will resolve all claims asserted against the Settling Defendants in the Litigation.

The Settlement was reached at a time when the Settling Parties understood the strengths and weaknesses of their respective positions, and only after the Settling Parties engaged in extensive arm's length negotiations mediated by former United States District Judge Layn R. Phillips (Ret.).  Lead Plaintiffs and Plaintiffs' Counsel believe that the proposed Settlement is an excellent result that is in the best interests of the Class, providing an immediate monetary benefit to the Class of $90 million in cash.  The Settlement must also be considered in the context of the risk that protracted and contested litigation, including dispositive motion practice, trial and likely appeals, could result in a lesser recovery against the Settling Defendants or no recovery at all.

At the Settlement Hearing, Lead Plaintiffs will submit detailed papers supporting the proposed Settlement, and will ask the Court to determine whether the Settlement is fair, reasonable and adequate.  At this time, however, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Class.  Specifically, Lead Plaintiffs request that the Court enter the proposed Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement (the "Preliminary Approval Order"), submitted herewith (and as Exhibit A to the Stipulation), which, *inter alia*, will:

(i)     preliminarily approve the Settlement on the terms set forth in the Stipulation;

(ii)    approve the form and content of the Notice of Pendency of Class Action and Proposed Settlement ("Notice"), Proof of Claim and Release form ("Proof of Claim") and Summary Notice of Pendency of Class Action and Proposed Settlement ("Summary Notice"), attached as Exhibits A-1, A-2 and A-3 to the Stipulation, respectively;

(iii)   find that the procedures established for distribution of the Notice and Proof of Claim and publication of the Summary Notice in the manner and form set forth in

the Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of due process, Rule 23 of the Federal Rules of Civil Procedure, and Section 27 of the Securities Act of 1933, 15 U.S.C. §77z-1(a)(7), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), Pub. L. 104-67, 109 Stat. 737;

(iv)    schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Proof of Claim and publishing the Summary Notice; requesting exclusion from the Class; objecting to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses or Lead Plaintiffs' request for reimbursement of costs and expenses; and submitting papers in support of final approval of the Settlement.

(v)     certify the Class, for purposes of the Settlement only, under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure; and

(vi)    appoint Lead Plaintiffs as representatives of the proposed Class and appoint Barrack Rodos & Bacine and Cohen Milstein Sellers & Toll PLLC as Class Counsel.

## BACKGROUND OF THE LITIGATION

On March 30, 2007, defendant Man Group, PLC ("Man Group") announced its intention to spin-off its brokerage business, then known as "Man Financial." The separation, subject to the approval of Man Group's shareholders, was accomplished by an initial public offering ("IPO") on the New York Stock Exchange ("NYSE") of a majority interest in the new company, known as MF Global Holdings Ltd. ("MF Global").

On July 18, 2007, MF Global announced that the IPO of approximately 97.4 million shares of its common stock had been priced at $30 per share – for anticipated gross proceeds of more than $2.92 billion – and that the shares would begin trading the following day, July 19, 2007. Prior to the IPO, no public market existed for trading of the Company's securities.

On July 20, 2007, Defendants filed the Registration Statement and Prospectus with the SEC, purportedly describing MF Global's operations, the nature of MF Global's spin-off from its parent, and the relationship that existed between MF Global and Man Group. Key to the Company's potential success was its need to manage the potential risks attendant to its high

3

volume brokerage and clearing operations.   Accordingly, the Registration Statement and Prospectus allegedly provided assurances to prospective shareholders that the Company had in place a rigorously and consistently applied risk-management system.

The First Amended Consolidated Class Action Complaint, dated November 5, 2010 (the "Complaint"), asserts claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l, and 77o, on behalf of the Class.  The Complaint alleges that the Settling Defendants made material misstatements and omissions regarding the risk management procedures employed in the Company's day-to-day operations in the Registration Statement and Prospectus.

Fundamental weaknesses in the Company's risk management system allegedly were exposed in February 28, 2008 when the Company announced that one of its brokers had engaged in unauthorized trading that resulted in a loss of approximately $141 million in the brief span of a few hours.  On the disclosure that the Company would have to clear the unauthorized trading and absorb the loss, the alleged flaws in the Company's risk management system were exposed, and MF Global's stock price fell.

The Litigation began on March 6, 2008, when a series of proposed class actions were filed against the Settling Defendants.  On March 31, April 7, April 9 and April 15, 2008, the Court issued orders consolidating these cases into the present Litigation before the Honorable Victor Marrero in the United States District Court for the Southern District of New York.  On June 23, 2008, the Court appointed Lead Plaintiffs and approved their selection of Barrack Rodos & Bacine and Cohen Milstein Sellers & Toll PLLC as Lead Counsel to represent the Class under the terms of the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737.

4

Lead Plaintiffs filed a Consolidated Class Action Complaint on September 12, 2008  (the "September 2008 Complaint") against the Settling Defendants and Lehman Brothers, Inc. ("Lehman").  On November 13, 2008, after Lehman had filed for bankruptcy, the Court ordered further proceedings against Lehman stayed pursuant to the automatic stay provision of the Bankruptcy Code.  On January 12, 2009, the Settling Defendants filed motions to dismiss the September 2008 Complaint.  On July 16, 2009, the Court dismissed all claims against the Settling Defendants and gave Lead Plaintiffs twenty days to request leave to amend.

On September 11, 2009, the Court denied Lead Plaintiffs' motion for leave to amend the September 2008 Complaint and entered final judgment for Defendants.  Lead Plaintiffs timely appealed the Court's orders dismissing the September 2008 Complaint and denying Lead Plaintiffs' motion for leave to amend.  The parties fully briefed Lead Plaintiffs' appeal to the United States Court of Appeals for the Second Circuit and oral argument was held on July 15, 2010.  On September 14, 2010, the Second Circuit affirmed in part and vacated in part the Court's rulings, and remanded the Litigation to the Court for proceedings consistent with its opinion.

On September 27, 2010, the Court granted Lead Plaintiffs' request to file an amended complaint consistent with the Second Circuit's opinion, and  Lead Plaintiffs filed the operative Complaint on November 5, 2010,

 Prior to the Settlement, Lead Plaintiffs, through Plaintiffs' Counsel, had conducted an in-depth investigation of the claims and underlying events relating to the Action.  This investigation included, among other things, review and analysis of: (i) publicly available information concerning the Settling Defendants, including newspaper articles, online publications, MF Global's stock price movement, statements at analyst conferences, and Bloomberg reports; (ii)

the grand jury indictment of the Company's broker as well as investigative findings by the Chicago Board of Trade and the Commodity Futures Trading Commission; (iii) regulatory filings made by the Settling Defendants with the United States Securities and Exchange Commission ("SEC"), including the Registration Statement and Prospectus; (iv) securities analysts' reports, public statements, media reports, and court records. Plaintiffs' Counsel also identified and interviewed a large number of witnesses and worked with a forensic accounting and damages expert to analyze this information.

On December 15, 2010 and December 21, 2010, the Settling Parties and their representatives explored a potential negotiated resolution of the claims against the Settling Defendants in mediation sessions conducted with Judge Phillips. The first mediation session resulted in an extended effort to settle the Litigation and was followed by numerous discussions between Judge Phillips and the Settling Parties in the week between the mediation sessions. This proposed settlement was reached after the second mediation, when the Settling Parties agreed to a mediator's recommendation.

Following the agreement in principle, the parties proceeded to negotiate the terms of a memorandum of understanding, followed by a Stipulation of Settlement. Prior to entering into that Stipulation, the parties engaged in extensive confirmatory discovery. Plaintiffs demanded and Defendants produced 1,781 core documents, totaling 38,433 pages, and Plaintiffs conducted four sworn depositions of fact witnesses with knowledge relating to the Plaintiffs' claims.

Accordingly, at the time the Stipulation of Settlement was executed, Lead Plaintiffs and Plaintiffs' Counsel had a good understanding of the strengths and weaknesses of Lead Plaintiffs' claims and the Settling Defendants' potential defenses. In light of (i) the Settlement's substantial benefits (including the payment of $90 million for the benefit of the Class); (ii) the cost and risks

of continuing the litigation against the Settling Defendants through trial and appeals; (iii) that the proposed Settlement resulted from arm's length negotiations assisted by an experienced mediator; and (iv) the approval of the Settlement by the Court-appointed Lead Plaintiffs, it is respectfully submitted that the Settlement warrants the Court's preliminary approval in order that notice can be provided to the Class.

**ARGUMENT**

**I.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.**

The settlement of complex class action litigation is favored by public policy and strongly encouraged.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.  The compromise of complex litigation is encouraged by the courts and favored by public policy") (internal quotation marks and citation omitted).   Approval of a proposed settlement is within the discretion of the district court, to be exercised in accordance with public policy strongly favoring pretrial settlement of class action lawsuits.  *In re Interpublic Sec. Litig.*, Nos. 02-6527, 03-1194, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

"Review of a proposed class action settlement generally involves a two-step process: preliminary approval and a 'fairness hearing.'   First, the court reviews the proposed terms of settlement and makes a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms."  *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005).  During this first-step, a court must consider whether the settlement warrants preliminary approval, providing notice to the proposed class and the scheduling of a final settlement hearing. In the second-step, after notice of the proposed settlement has been provided to the class and a

hearing has been held to consider the fairness and adequacy of the proposed settlement, the court

considers whether the settlement warrants "final approval."  *Id.* at 200 n. 71.[3]

> As explained by Judge Robert Sweet:
>
> In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.  Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.   Once preliminary approval is bestowed, the second step of the process ensues. . . .

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (citations

omitted); *see also In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007).

In essence, the Court should determine whether the settlement is "at least sufficiently fair,

reasonable and adequate to justify notice to those affected and an opportunity to be heard."

*NASDAQ*, 176 F.R.D. at 102 (citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163

F.R.D. 200, 209 (S.D.N.Y. 1995) ("The Court's function now is to ascertain whether there is any

reason to notify the class members of the proposed settlement and to proceed with a fairness

hearing.") (internal quotation marks omitted).

The terms of the proposed Settlement here are clearly "within the range of possible

approval." *Initial Pub. Offering*, 243 F.R.D. at 87.   Although Lead Plaintiffs and Plaintiffs'

Counsel believe that the claims asserted in the Litigation against the Settling Defendants are

meritorious, continued litigation posed the real risk that, following contested motions, a trial or

further appeals, a lesser recovery (or no recovery at all) would result.   Indeed, the original

---

[3] A final approval determination is based on an analysis of nine factors established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).  The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation being settled; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the litigation as a class action through trial; (7) ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of best possible recovery; and (9) the range of reasonableness of the settlement to a possible recovery in light of the attendant risks of litigation.  *Id.* at 463.

complaint in the Litigation was dismissed with prejudice, and Lead Plaintiffs had to appeal to the Second Circuit to reinstate the action and then file the present operative Complaint. The Settling Defendants would likely continue to argue, *inter alia*, that the statements made in the Restatement and Prospectus were not materially false and misleading, and that in any event, Plaintiffs' losses were not caused by the alleged misrepresentations and omissions. The Settling Defendants would also likely argue that they provided sufficient warnings that MF Global's risk management system might fail. Each of these issues involves complicated law and facts, and there remains a significant risk that a jury might agree with the Settling Defendants on one or more of these issues. Thus, the substantial payment of $90 million, when viewed in the context of these risks and the uncertainties involved with any litigation, makes the Settlement a strong result for the Class.

The Settlement was negotiated at arm's length, by counsel who were well-informed of the issues in the Litigation, and are experienced in complex securities litigation. The Litigation was actively prosecuted for over three years, including an appeal to the Second Circuit.

Moreover, the Settlement was achieved with the significant assistance of Judge Phillips, an experienced mediator and a well-respected former United States District Court Judge. These factors further support approval of the Settlement. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's length and without collusion."); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated with the assistance of Judge Layn Phillips and

referring to him as "one of the most prominent and highly skilled mediators of complex actions"). Accordingly, Lead Plaintiffs respectfully submit that the Court should preliminarily approve the Settlement.

## II. CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE.

In granting preliminary settlement approval, the Court should also certify the Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Class consists of:

> any person or entity, including their legal representatives, heirs, successors or assigns, who purchased or otherwise acquired MF Global common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with the Company's IPO on or about July 19, 2007, and was damaged thereby. Excluded from the Class are the Settling Defendants; Lehman; the officers and directors of the Company, of Man Group, of Man U.K., of the Underwriter Defendants and of Lehman at all relevant times; members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which any Settling Defendant or Lehman has or had a majority interest. Also excluded from the Class are any proposed Class Members who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set forth in the Notice.

Stipulation ¶ 1(d).

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id.* (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)).

A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). Nevertheless, the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems… is not a consideration when settlement-only certification is requested."). Here, the proposed Class meets all the requirements of Rule 23, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable, and subject to the Court's approval.

As explained *infra*, certification is appropriate because the proposed Class meets all the requirements of Rule 23(a) and Rule 23(b)(3).

## A.    The Class Satisfies the Requirements of Rule 23(a).

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

### 1.    The Class Members Are Too Numerous to Be Joined.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, the Class comprises the purchasers of approximately 97.4 million shares of MF Global common stock issued in connection with the Company's IPO on or about July 19, 2007. Although the number of Class Members can not be identified with specificity at this time, it is likely to be in the thousands.   Thus, the Class is sufficiently numerous that joinder of all members would be impracticable, and accordingly satisfies Rule 23(a)(1).  *See id.* at 483; *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 175 (S.D.N.Y. 2008) (class of shareholders numbering in hundreds or thousands satisfied the numerosity requirement); *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) ("Plaintiffs are not obligated to prove the exact class size to satisfy numerosity ... the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period") (internal quotation marks and citations omitted) .

### 2.     There Are Common Questions of Law and Fact.

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class.  *See Cent. States*, 504 F.3d at 245; *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).  Federal securities cases easily meet the commonality requirement, which is satisfied where "putative class members have been injured by similar material misrepresentations and omissions."  *Initial Pub. Offering*, 243 F.R.D. at 85; *see In re Globalstar Sec. Litig.*, No. 01 Civ. 1745 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, whether those statements were knowingly and recklessly issued, and ensuing causation issues."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000) ("Where the facts as alleged

show that Defendants' course of conduct concealed material information from an entire putative

class, the commonality requirement is met.").

Plaintiffs have asserted claims under Sections 11, 12(a)(2), and 15 of the Securities Act

against the Settling Defendants.  These claims present many questions of law and fact which are

common to all Class Members, including:

- whether the Settling Defendants' actions and statements violated federal securities laws;

- whether the Registration Statement and Prospectus issued by the Settling Defendants contained untrue statements of material facts or omitted material information regarding MF Global's risk management policies, procedures and systems or failed to include material facts necessary to make the statements made not misleading;

- whether the Settling Defendants performed appropriate due diligence in advance of the IPO;

- whether Man Group and the Individual Defendants are controlling persons of MF Global within the meaning of § 15 of the Securities Act;

- whether the Settling Defendants' conduct caused Class Members' losses; and

- whether and to what extent the members of the Class have sustained damages and the proper methods for measuring those damages.

*See* Compl. ¶ 46.  Because these questions of law and fact are common to all members of the

Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.   The Class Representatives' Claims Are Typical of Those of the Class.

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the

claims of the class.  Fed. R. Civ. P. 23(a)(3).  Typicality is established where "the claims of the

named plaintiffs arise from same practice or course of conduct that gives rise to the claims of the

proposed class members."  *In re Vivendi Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007) (citation

omitted); *see also Oxford Health Plans*, 191 F.R.D. at 375.  "Typical" does not mean "identical."

*See Marsh & McLennan*, 2009 WL 5178546, at *10.  The focus of the typicality inquiry is not the plaintiff's behavior, but rather the defendants' actions.  *See ACLN*, 2004 WL 2997957, at *4. The critical question is whether the proposed class representatives and the class can point to the same "common course of conduct" by defendants to support a claim for relief.  Accordingly, "[f]actual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the securities will not destroy typicality if each class member was the victim of the same material misstatements and the same fraudulent course of conduct." *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also Robidoux*, 987 F.2d at 936-37 ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.").

Here, the same alleged course of conduct by the Settling Defendants caused the injuries to Lead Plaintiffs and the members of the Class, and liability for this conduct is predicated on the same legal theories.  Lead Plaintiffs allege that, like the rest of the Class, they paid artificially-inflated prices for MF Global common stock as a result of the Settlement Defendants' allegedly materially false statements in the Registration Statement and Prospectus.  Lead Plaintiffs' claims, and the claims of absent Class Members, rest on the same theories and require the same proof. Therefore, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.    The Class Representatives Will Fairly and Adequately Protect the Interest of the Class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must measure the adequacy of representation by two standards: whether (1) the claims of the lead plaintiffs conflict with those of the class; and (2) the lead plaintiffs' counsel are qualified, experienced, and generally able to

conduct the litigation. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Marsh & McLennan*, 2009 WL 5178546, at *10; *Oxford Health Plans*, 191 F.R.D. at 376.

Lead Plaintiffs and the Class share the common objective of maximizing their recovery, and no conflict exists between Lead Plaintiffs and the members of the Class. *See Drexel*, 960 F.2d at 291; *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members"). Moreover, Plaintiffs' Counsel have extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States, and are qualified and able to conduct this litigation. *See* Rosen Declaration, Exhibits 2 and 3. Therefore, Rule 23(a)(4) is satisfied.

**B.      The Class Representatives' Claims Satisfy the Prerequisites of Rule 23(b)(3).**

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expense, and promote…. uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15 (citation omitted). Certification of the Class serves these purposes.

**1.      Common Legal and Factual Questions Predominate.**

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized

proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Marsh & McLennan*, 2009 WL 5178546, at *11 (quoting *Moore v. Paine Webber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)).  Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages.  *See Marsh & McLennan*, 2009 WL 5178546, at *11; *Initial Pub. Offering*, 243 F.R.D. at 92; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In determining whether common questions of fact predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class.").  As the Supreme Court has noted, predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625.

Here, the same alleged course of conduct by the Settling Defendants forms the basis of all Class Members' claims.  There are numerous common issues relating to the Settling Defendants' liability which predominate over any individualized issues.  The predominance requirement of Rule 23(b)(3) is, therefore, satisfied.

## 2.    A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in making a determination of whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution…of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by … class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  *See* Fed. R. Civ. P. 23(b)(3).

Considering these factors, this consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the federal securities law claims of the large number of purchasers of MF Global common stock in the IPO.   Indeed, courts have concluded that the class action device in securities cases is usually the superior method of redressing injuries to a large number of individual plaintiffs:

> In general, securities suits such as this easily satisfy the superiority requirement of Rule 23.  Most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible.  Multiple lawsuits would be costly and inefficient, and the exclusion of class members who cannot afford separate representation would neither be "fair" nor an adjudication of their claims.  Moreover, although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf.

*Blech,* 187 F.R.D. at 107.  *See also Marsh & McLennan*, 2009 WL 5178546, at *12 (recognizing that the "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions"); *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule, securities fraud cases 'easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws ... inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursing individual litigation to seek recovery is often not feasible'").

There has been no indication that Class Members wish to individually control the prosecution of separate actions against the Settling Defendants.   Indeed, the scope and complexity of Lead Plaintiffs' claims against the Settling Defendants, together with the high cost of individualized litigation, make it unlikely that, absent class certification, the vast majority of the Class Members would be able to obtain relief.  Finally, any potential difficulties of managing

17

the class action in further litigation and at trial need not be considered here because the parties

seek to certify the Class solely for the purposes of settlement.  As the Supreme Court explained

in *Amchem*, "[c]onfronted with a request for settlement-only class certification, a district court

need not inquire whether the case, if tried, would present intractable management problems . . .

for the proposal is that there be no trial."  521 U.S. at 620.  Accordingly, the requirements of

Rule 23(b)(3) are satisfied.

## III.    NOTICE TO THE CLASS SHOULD BE APPROVED.

As outlined in the Preliminary Approval Order, Lead Plaintiffs will notify Class

Members of the Settlement by mailing the Notice and Proof of Claim to all Class Members who

can be identified with reasonable effort.  The Notice will advise Class Members of (i) the

pendency of the class action; (ii) the essential terms of this Settlement; and (iii) information

regarding Lead Counsel's motion for attorneys' fees and reimbursement of litigation expenses.

The Notice also will provide specifics on the date, time and place of the Settlement Hearing and

set forth the procedures for opting out of the Class and for objecting to the Settlement, the

proposed Plan of Allocation or the motion for attorneys' fees and reimbursement of litigation

expenses.  The proposed Preliminary Approval Order further requires Lead Plaintiffs to cause the

Summary Notice to be published in the *Wall Street Journal* and transmitted over *PR Newswire*.

Lead Counsel will also post a copy of the Notice on their websites and on a dedicated settlement

website.

The form and manner of providing notice to the Class satisfy the requirements of due

process, Rule 23, and Section 27 of the Securities Act of 1933, 15 U.S.C. §77z-1(a)(7), as

amended by the PSLRA.  The Notice and Summary Notice "fairly apprise the prospective

members of the class of the terms of the proposed settlement and of the options that are open to

them in connection with the proceedings," *Wal-Mart*, 396 F.3d at 114 (internal quotation marks

omitted).  The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  *See In re Warner Chilcott Ltd. Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448-49 (S.D.N.Y. 2004).

## CONCLUSION

Lead Plaintiffs respectfully request that the Court  (i) preliminarily approve the proposed Settlement as within the range of possible fairness, reasonableness and adequacy; (ii) certify the Class for purposes of the Settlement only; (iii) approve the proposed form and manner of notice to putative Class Members; and (iv) schedule a hearing in the month of November 2011 on Lead Plaintiffs' motion for final approval of the Settlement and Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses.  A proposed Preliminary Approval Order is being submitted herewith.

Dated:  August 11, 2011

Respectfully submitted,

**BARRACK, RODOS & BACINE**

**COHEN MILSTEIN SELLERS
    & TOLL PLLC**

/s/ Mark R. Rosen
Mark R. Rosen
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 963-0600
Fax: (215)963-0838

Carol V. Gilden
190 S. LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: (312) 357-0370
Fax: (312) 357-0369

William J. Ban
425 Park Avenue, 31st Floor
New York, NY 10022
Tel:(212)688-0782
Fax: (212) 688-0783

Steven J. Toll
Daniel S. Sommers
S. Douglas Bunch
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Co-Lead Counsel for
Lead Plaintiffs and the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Jonathan Gardner
Angelina Nguyen
140 Broadway
New York, NY 10005
Tel: (212) 907-0700
Fax: (212) 818-047

*Additional Counsel for Plaintiff State-Boston
Retirement System*